In re VICTOR TECHNOLOGIES
SECURITIES LITIGATION.

No. C–83–3906(a) RFP.

United States District Court,
N.D. California.

April 4, 1984.

**54**

William J. Lerach, John E. Grasberger, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., David B. Gold, Paul F. Bennett, David B. Gold, a professional law corp., San Francisco, Cal., for plaintiffs.

Michael F. Perlis, Philip F. Atkins-Pattenson, Pettit & Martin, San Francisco, Cal., for Peddle and Monroe.

Sanford Litvack, Clark Walter, Donovan, Leisure, Newton & Irvine, New York City, for defendants Kidde, Inc., Sullivan, Ficca and Sheridan.

M. Laurence Popofsky, Peter A. Wald, Heller, Ehrman, White & McCauliffe, San Francisco, Cal., for Rothschild, Unterberg, Towbin, Bear, Stearnes & Co., and Charterhouse-Japhet.

Charles A. Legge, David L. Sanborg, Bronson, Bronson & McKinnon, San Francisco, Cal., for Arthur Andersen & Co.

## OPINION

PECKHAM, Chief Judge.

This matter comes before the court on plaintiffs' motions for certification of three classes, one plaintiff class and two defendant classes, pursuant to rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. Upon consideration of the memoranda filed in support of and in opposition to the various motions, and upon review of the oral arguments made by counsel, the court rules as follows.

## FACTUAL BACKGROUND

The named plaintiffs in this action are individuals who purchased stock in Victor Technologies, Inc. ("Victor") pursuant to a March 23, 1983 public offering of 4,500,000 shares of common stock. The named defendants are Victor, certain of Victor's officers and directors, a principal shareholder (Kidde, Inc.), Victor's accounting firm (Arthur Andersen & Co.), and the lead underwriters who participated in the public offering (L.F. Rothschild, Unterberg, Towbin; Bear, Stearns & Co.; and Charterhouse Japhet plc).

Victor is a Delaware corporation with its principal place of business in Scotts Valley, California. It was founded in 1980 and, following Delaware reincorporation in June 1981, operated under the name of Sirius Systems Technology, Inc. ("Sirius").

In September 1981, Sirius granted Victor United, Inc. ("Victor United"), a subsidiary of Kidde, Inc. ("Kidde") the exclusive right to market its computers in North America. This operation was apparently not as successful as had been anticipated and by mid-1983, Victor United had suffered substantial losses.

In response to these losses, Kidde agreed to transfer Victor United to Sirius and to assist Sirius in the operation of Victor United. In return, Kidde was to receive equity in the new company to be known as Victor Technologies, Inc. The equity, in the form of corporate securities, was to be converted to common stock and sold in early 1983

during a contemplated public offering. This transfer of Victor United to Sirius (which then became Victor Technologies) occurred on October 3, 1982.

On March 23, 1983 Victor commenced a public offering of 4,500,000 shares of common stock at $17.50 a share. This offering was made pursuant to a Registration Statement and Prospectus filed with the Securities and Exchange Commission on March 23, 1983.

The plaintiffs contend that the Registration Statement and Prospectus were materially false and misleading. In particular, the plaintiffs contend that the defendants failed to disclose that Victor actually suffered substantial losses during the fourth quarter of 1982, rather than the profits claimed in the offering materials. Furthermore, the plaintiffs contend that the offering materials failed to reveal material problems with Victor's production and marketing capabilities.

On June 29, 1983, Victor announced that it anticipated a second quarter loss for 1983 and that its sales were less than anticipated due to delays in the delivery of crucial disc drives. This announcement was reported in the *Wall Street Journal* the following day. As a result of this information, the price of a share of Victor stock dropped on June 30 from $17.50 to $14.25.

On August 15, 1983, Victor announced a second quarter loss for 1983 of $11.1 million on sales of $66.6 million. Victor laid off 23% of its work force and imposed an indefinite hiring and salary freeze. Following this announcement, the price of a share of Victor common stock plummeted to below $7 per share. On February 6, 1983, Victor announced that it was filing for protection under Chapter 11 of the bankruptcy statute.

The plaintiffs have filed suit against the defendants alleging various causes of action under federal securities laws, as well as claims arising under state statutory and common law.

## DISCUSSION

### I. Certification of the Plaintiff Class

The plaintiffs seek certification of the following class:

> All persons and entities, other than defendants, who purchased the common stock of defendant Victor Technologies, Inc. from March 23, 1983 through August 16, 1983, inclusive.

As a preliminary matter, the court notes that this is the appropriate juncture in the litigation for the court to address the certification issues for both the plaintiff as well as the defendant classes. Rule 23 of the Federal Rules of Civil Procedure states that "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." The defendants have raised no objection to adjudicating the class certification at this time.

■ As a further preliminary matter, it is worth noting that the court's determination of the class certification issues is only reviewable for abuse of discretion. *Wrighten v. Metropolitian Hospitals, Inc.,* 726 F.2d 1346, 1351 (9th Cir.1984); *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983).

Certification of any class, plaintiff or defendant, requires that the putative class meet the four requirements of rule 23(a) and that it qualify under one of the three subdivisions of rule 23(b). All of these statutory requirements are discussed below.

#### A. Prerequisites under rule 23(a)

Rule 23(a) sets out the first aspect of the standard for certifying a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the represent-

ative parties will fairly and adequately protect the interests of the class.

The defendants mount no specific challenges to the maintenance of the plaintiff class on any of the four rule 23(a) grounds. Although the defendants do raise certain objections to the plaintiff class, *see infra* at 57–60, there is no serious dispute that these four prerequisites have been satisfied. As the court is required to make specific findings on each of these points, however, each is discussed below.

### 1. Numerosity

The first prong of rule 23(a) requires that the class be sufficiently numerous so as to make joinder of all members impracticable. This action involves the sale of 4,500,000 shares of Victor common stock. In their complaint, the plaintiffs allege that there were "thousands" of purchasers who bought that stock during the class period. The size of the proposed class is sufficiently numerous to make joinder of all members impracticable.

As the defendants do not challenge the certification of the class on this ground, the court finds that the numerosity requirement is satisfied.

### 2. Commonality of Questions of Law or Fact

The second requirement under rule 23(a) is that the class members must have questions of law or fact in common. In this action, the securities violations alleged by the plaintiffs in this action fit within the type of misrepresentations deemed a "common course of conduct" by the Ninth Circuit. *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909, 914 (9th Cir.1964). *See Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *McFarland v. Memorex Corp.,* 96 F.R.D. 357, 362 (N.D.Cal.1982); *In re United States Financial Securities Litigation,* 64 F.R.D. 443, 448 (S.D.Cal.1974); *In re Memorex Securities Litigation,* 61 F.R.D. 88, 96 (N.D.Cal.1973).

The material misrepresentations or omissions alleged by plaintiffs will be common to all class members. These misrepresentations or omissions were all allegedly contained in the March 23, 1983 offering materials. As such, there are common questions of fact. Similarly, there will be common questions of law concerning the significance of these facts that arise under the securities statutes.

The court finds that the commonality requirement has been satisfied.

### 3. Typicality

Under this requirement, the named class members must present claims that are "typical" of the class. The named plaintiffs in this action do not appear to be in a position that differs in any way from that of the putative class members. The defendants have alleged no conflicts likely to arise within the putative class and thus there appears to be no problem under the typicality requirement.

The only possible distinction between class members that could be suggested arises in the amount of damages each could claim. As the plaintiffs note, these potential differences are insufficient to defeat the maintenance of a class action. "The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack,* 524 F.2d at 905. *See In re Memorex Securities Litigation,* 61 F.R.D. at 103 ("To deny a class determination on the ground that the computation of damages might render the cause unmanageable would encourage corporations to commit grand acts of fraud instead of small ones with the thought of raising the spectre of unmanageability to defeat a class action").

The court finds that the typicality requirement has been met.

### 4. Fair and Adequate Representation

The fourth prong of rule 23(a) mandates that the plaintiffs must "fairly and adequately protect the interests of the class." This requirement has been found to have two distinct components. First, counsel for

the putative class representatives must have the competence to undertake the particular litigation. Second, the court must ensure that the class representatives are not engaged in collusive litigation or have interests antagonistic to other class members. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968) (*Eisen II*); *Contract Buyers League v. F & F Investment Co.*, 48 F.R.D. 7, 10 (N.D.Ill.1969); *Mersay v. First Republic Corp.*, 43 F.R.D. 465 (S.D.N.Y.1968).

Both of these considerations have been met here. Class counsel for the plaintiffs have participated in sophisticated securities class actions before and there is no allegation that they are not competent to handle this action. Similarly, there has been no showing that the class representatives are engaged in collusive litigation or have interests antagonistic to any other class members.

The court finds that the named plaintiffs will be fair and adequate representatives of the putative class.

Thus, the court concludes that all four of the rule 23(a) requirements have been met.

## B. Certification of Plaintiff Class under Rule 23(b)(3)

Under rule 23(b), once the four prerequisites of 23(a) have been met, the class to be certified must also qualify under one of the three provisions of rule 23(b). In this action, the plaintiffs seek certification under rule 23(b)(3) which states that a class action can be maintained if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As outlined above in the discussion of rule 23(a), the common questions of law and fact not only predominate in this action, they appear to be the *only* questions to be resolved. Other than the final question of individual damages (which of course may never be reached if there is no finding of liability on the part of the defendants), it is difficult to discern any question of law or fact that will differ among members of the putative plaintiff class.

Thus, the court concludes that common questions of law and fact predominate over any questions affecting individual members. *See Blackie v. Barrack*, 524 F.2d at 905–8.

Similarly, this court finds that the class action format is the superior method for resolving this dispute. Under the four factors to be considered under rule 23(b)(3), there seems to be no showing that any individual member would have a sufficient financial interest in controlling his/her individual litigation that could outweigh the significant advantages of class treatment. *See duPont Glore Forgan Inc., v. American Telephone & Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y.1975). If this action is not maintained as a class action, many (if not most) of the putative class members would probably be unable to prosecute their claims in a cost-effective manner. More importantly, there do not appear to be any significant or unworkable management problems associated with this litigation if it is maintained as a class action.

## C. Defendants' Objections to Certification of Plaintiff Class

The defendants have raised three substantive objections to the scope of the plaintiff class. These objections do not

challenge the appropriateness of the class action format in a general way. Instead, these objections focus on either the parameters of the class period or on the use of the class action for litigating certain state law claims. Each of the defendants' objections is outlined below.

### 1. Duration of class period

The defendants contend that the class period should not terminate on August 16, 1983 as requested by the plaintiffs, but rather should terminate earlier on June 30, 1983. The defendants argue that the press release issued by Victor on June 29 put investors on notice of the developing problems with the company. Under this argument, anyone who purchased Victor stock after June 29 did so with adequate warning.

The plaintiffs argue, on the other hand, that this court is proscribed from making any inquiry into the merits at this class certification stage. Thus, the plaintiffs claim that this court cannot use the June 29 press release as a factual ground for shortening the class period. Furthermore, the plaintiffs contend as part of their initial complaint in this action that Victor's June 29 press release was itself inherently ambiguous and misleading and that class members were not put on notice until the official announcement on August 15, 1983.

In arguing that the class period should terminate at the earlier June 30 date, the defendants contend that a class period should be cut off "when curative information is publicly announced or otherwise effectively disseminated." *McFarland v. Memorex Corp.*, 96 F.R.D. at 364. *See Shapiro v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir.1974); *Elkind v. Liggett & Myers, Inc.*, 472 F.Supp. 123 (S.D.N.Y.1978), *aff'd in part and rev'd in part*, 635 F.2d 156 (2d Cir. 1980). The defendants contend that the June 29 announcement of lower sales provided the "curative information" that warned all potential investors and thus, anyone who purchased after June 29 was not misled.

For purposes of this class certification motion, the court cannot accept the defendants' argument. First, this argument invites the court to conduct an inquiry into the merits of the case by examining the language and effect of the June 29 press release. Under controlling Ninth Circuit law, a motion for class certification "does not permit or require a preliminary inquiry into the merits." *Blackie v. Barrack*, 524 F.2d at 901, *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*). Examining whether a document issued during the proposed class period "effectively cured" an alleged earlier misrepresentation calls for just such a proscribed inquiry into the merits. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571–72 (2d Cir.) *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Fine v. Houston Oil Trust*, [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,422 (S.D.Tex.1983); *In re Wickes Companies Securities Litigation*, M.D.L. No. 513 "Memorandum Decision" at 8–9 (S.D.Cal. Jan. 6, 1983).

Furthermore, the plaintiffs advance an additional factual argument for not shortening the class period. The plaintiffs contend that the June 29 press release was in itself misleading in that it grossly understated the magnitude of the problems facing Victor. In essence, the plaintiffs rely upon the June 29 press release as evidence that demonstrates the common course of conduct alleged in the complaint.

Thus, at this juncture, the court cannot shorten the class period in the manner suggested by the defendants. There appears to be no way for this court to identify June 30 as the cutoff date without making a proscribed inquiry into the merits. For the purposes of certifying the class, the court finds that the August 16 date is the appropriate termination point. Of course, should the development of facts during the course of the litigation prove otherwise, this court can always fashion appropriate relief at that time.

### B. Class certification for state law claims

The defendants also contend that class certification should be denied for the plaintiffs' state common law claims of fraud and negligent misrepresentation. The defendants base this argument on a contention that individual questions predominate over common questions in these claims and that they are therefore unsuitable for class action treatment. As a secondary argument, the defendants also maintain that the plaintiffs' common law claims "raise questions of law and fact under the law of every state where a purchase of [the defendant's] stock was made." *McFarland v. Memorex Corp.*, 96 F.R.D. at 364.

■ The court finds that both of these arguments are misplaced. First, it is not clear how the defendants can legitimately contend that individual questions will predominate over common questions. The same proof that will be introduced in the federal securities law claims will be relevant to the state law claims. The defendants have failed to show a single instance of how the proof of the state law claims will require evidence that will not also be required in proving the federal claims. As the plaintiffs note, there are no individual acts of fraud or misrepresentation alleged; the state law claims are predicated upon exactly the same conduct (material misrepresentations and omissions) that lies at the heart of the federal securities claims.

Furthermore, although the defendants are correct in noting that Judge Ingram did refuse to certify a class for the state law claims in *McFarland v. Memorex Corp.*, *id.*, such a refusal appears to be the minority approach. Numerous other courts have certified pendent state law claims when a class is certified for the litigation of federal security law claims. *See, e.g., Cameron v. Adams*, 547 F.2d 473, 478 (9th Cir.1976); *Dekro v. Stern Brothers & Co.*, 540 F.Supp. 406, 418–19 (W.D.Mo.1982); *Koenig v. Smith*, 88 F.R.D. 604 (S.D.N.Y.1980); *Greene v. Emersons, Ltd.*, 86 F.R.D. 47 (S.D.N.Y.1980); *Helfand v. Cenco*, 80 F.R.D. 1, 10 (N.D.Ill.1977).

■ The defendants also seem to be incorrect in arguing that the law to be applied to the pendent state law claims will automatically be that of the various (and admittedly numerous) states where the purchasers of Victor stock resided. Instead, this court will most likely apply California law to all pendent state law claims. Thus, the defendants' choice of law argument adds little impetus to their claim that class certification should be denied on these state law claims.

■ Under the analysis outlined by the plaintiffs, with which this court concurs, there is unlikely to be a choice of law problem for the following reasons. In ruling on pendent state law claims, this court must apply the choice of law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980). Thus, this court must look to California choice of law rules. Under the relevant California law, the defendants have the burden of demonstrating that "the law of other states relating to the pendent claims is significantly different from California's and, more importantly, that the interests of the other state would be impaired by application of California law to these non-resident plaintiffs." *Harmsen v. Smith*, 693 F.2d 932, 947 (9th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). *See Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 164–66, 148 Cal.Rptr. 867, 583 P.2d 721 (1978) (Tobriner, J.). As the California Supreme Court has noted, "generally speaking, the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event, he must demonstrate that the latter rule of decision will further the interests of the foreign state..." *Hurtado v. Superior Court*, 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). *See Reich v. Purcell*, 67 Cal.2d 551, 554, 63 Cal.Rptr. 31, 432 P.2d 727 (1967).

The defendants have not shown that the law of a foreign state differs from that of California nor have they demonstrated that the interests of these foreign states might be furthered by applying this as yet unspecified law. Under the California choice of law rules which this court must follow in assessing the pendent state law claims, the California rule of decision will apparently be applied.

Thus, the defendants' arguments are to date unpersuasive. Accordingly, the court finds that provisional certification of the plaintiff class is appropriate for the pendent state common law claims. There is no need to issue a final certification on this point now; it is appropriate to certify the class provisionally and note that this class will be decertified if it develops that class treatment of the pendent claims is too cumbersome. *See In re Wickes Companies Securities Litigation*, M.D.L. No. 513 "Memorandum Decision" at 7 (S.D.Cal. March 7, 1983). *See also Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 633 (9th Cir.1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983).

3. *Class certification for claims brought under §§ 25500, 25501 of California Corporations Code*

The defendants contend that the plaintiffs' claim brought under the California Corporations Code should not be certified as a class action. The defendants contend that the only plaintiffs who can maintain a cause of action under this statute are those who actually purchased Victor stock in California. As the plaintiffs correctly observe, this argument of the defendants is erroneous and the class should be certified for this cause of action as well.

The jurisdictional prerequisites of a claim filed under section 25500 are satisfied when offers of securities are made from California to persons outside the state, or when acceptance of the offer is directed to a person within California. *See* Cal.Corp. Code § 25008(b). *See generally* Marsh &

Volk, *Practice under the California Securities Laws*, § 3.08[1] (1983).

■ As the offering materials in this action apparently emanated from Victor's California headquarters, and the buyers' acceptances were apparently directed at a California entity, it is appropriate to certify a plaintiff class for this claim. It should be emphasized, however, that the class certification for the claims filed under the California Corporations Code includes only those purchasers of Victor stock who purchased in direct response to the initial March 23 public offering. Those who purchased Victor stock on the open market at some point after the initial public offering will not be part of the sub-class entitled to proceed under sections 25500 and 25501 of the California Corporations Code. (Of course, if those who purchased later were California purchasers, they will be entitled to maintain a claim under the California Code.)

SUMMARY

Thus, the plaintiff class as defined by the plaintiffs will be certified for all claims except those pleaded under state law. Certification for those classes pursuing claims pleaded under state law will be modified as follows. The pendent state common law claims will be certified provisionally, but will be decertified if the litigation of these claims proves too cumbersome. A class will be certified for the claims pleaded under the California Corporations Code to include only those purchasers who bought Victor stock in response to the initial public offering. Those who purchased on the open market at some point after the initial public offering will not be included in this class unless their purchase(s) occurred in California.

II. *Certification of the Defendant Classes*

The plaintiffs also move for the certification of two distinct defendant classes. The members of the two classes are the same— all of the underwriters who participated in the March 23, 1983 public offering of Vic-

tor Technology, Inc. stock—but the legal claims are different. The first class involves the claim against the defendant underwriters brought under section 11 of the Securities Act of 1933 (15 U.S.C. § 77k). Under this claim, the plaintiffs seek to litigate the defendant underwriters' overall liability under section 11. (For purposes of clarity, the court shall refer to this class as the section 11 class.) The plaintiffs move to certify this class under rule 23(b)(3).

The second class that the plaintiffs seek to have certified involves the claim against the defendant underwriters arising under section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77l(2)). (This class shall be deemed the section 12 class.) The plaintiffs seek to certify this class for the litigation of a single issue only: whether the March 23, 1983 Registration Statement and Prospectus contained materially false and misleading statements or omissions. Unlike the section 11 claim which covers all elements of that cause of action, the section 12 class will be for the purpose of litigating this single issue. Certification of the section 12 class is sought under rule 23(b)(1).

The general motivation behind these motions for defendant class certification is to avoid proceeding against each of the approximately 93 defendant underwriters separately. Until recently, the case law on defendant class actions in complex securities litigations was virtually non-existent. The Northern District of California has, however, been at the forefront of employing this class action mechanism in complex securities litigation. In 1978, in *In re Gap Stores Securities Litigation,* 79 F.R.D. 283 (N.D.Cal.1978) (*"Gap Stores"*), Judge Williams set out in a long and well reasoned opinion the rationale for employing a defendant class action in the securities context. Judge Williams' approach has been subsequently followed by Judge Aguilar in *In re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Cal.1981) (*"Itel"*), Judge Ingram in *McFarland v. Memorex Corp.,* 96 F.R.D. 357 (N.D.Cal.1982) (*"McFarland"*),

and Judge Orrick in *Gauss v. Magnuson Computer Systems, Inc.,* No. C 82–1091 WHO, No. C 82–2065 WHO "Order Certifying Defendant Class of Underwriters" (N.D.Cal. December 3, 1982). Thus, there is ample precedent in the Northern District for employing the defendant class action.

With this as general background, the court will now discuss the two particular classes sought by the plaintiffs.

*A. Section 11 Class Certification under Rule 23(b)(3)*

Plaintiffs request the certification of a defendant class defined as:

All underwriters who, pursuant to a single Underwriting Agreement, participated in the initial registered public offering and sale of Victor common stock on or about March 23, 1983.

In addition to the defendant class representatives,[*] there are approximately another 90 defendant underwriters who participated in the March 23 public offering of Victor common stock. The plaintiffs seek to certify this class of underwriters as a 23(b)(3) class for the purpose of litigating the underwriters' overall liability under section 11 of the Securities Act of 1933. To merit certification as a defendant class, the class must comply with the four prerequisites of rule 23(a), as well as fit into one of the three categories of rule 23(b). Each is discussed below.

*1. Satisfaction of the rule 23(a) requirements*

▇▇ As stated above in the discussion of the plaintiff class certification, the four prerequisites of rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. The defendants do not seriously dispute that the section 11 defendant class comports with each of these requirements.

---

\* The defendant class representatives are Rothschild, Bear Stearns, and Charterhouse.

#### a. Numerosity

There are approximately 93 defendant underwriters involved in this action. Although the rule does not establish with any specificity how numerous a class must be before the numerosity requirement is satisfied, the number of underwriters involved in this action falls within the range set out by other courts who have approved defendant class actions. *See Itel*, 89 F.R.D. at 111–12 (104 underwriters); *Gap Stores*, 79 F.R.D. at 302 (91 underwriters.)

The court finds that the numerosity requirement has been met.

#### b. Commonality

The central issue under the section 11 claim is whether the registration and prospectus contained a material misrepresentation or omission. *See Gap Stores*, 79 F.R.D. at 302. As all of the underwriters used the same offering materials, this question of material misrepresentation or omission will be common to all of the underwriters. Similarly, there will be common questions regarding the affirmative defenses available to the putative defendant class.

The court finds that the commonality requirement has been met.

#### c. Typicality

All of the underwriters will have three typical and identical affirmative defenses: that the offering materials contained no misrepresentation or omission; that the lead underwriters acted with due diligence; and that the plaintiffs purchased Victor common stock with knowledge of the true state of affairs. *Itel*, 89 F.R.D. at 112.

As identical issues and affirmative defenses are present in this action, the court finds that the typicality requirement has been met.

#### d. Adequacy of representation

■ As discussed above, the adequacy of representation requirement is two-fold. The counsel representing the putative class must be competent to represent the interests of the class, *see Bogosian v. Gulf Oil Corp.*, 561 F.2d at 449, and there must be no disabling conflicts between the class representatives and the other members of the class, *see Eisen II*, 391 F.2d at 562.

There is no dispute that the counsel representing the named defendants are skilled and competent counsel. They have had ample experience in complex securities matters and are equipped to handle this action. Furthermore, there is no doubt that the class representatives (who were the lead underwriters) have a significant financial stake in vigorously defending this action. There appear to be no meaningful conflicts between the class representatives and the members of the putative class.

The court finds that the adequacy of representation requirement has been met.

Thus, the court concludes that all of the 23(a) requirements have been met with respect to the section 11 class.

#### 2. Satisfaction of requirements of rule 23(b)(3)

Certification of the section 11 claim under rule 23(b)(3) requires that, in addition to meeting the prerequisites of rule 23(a), the court find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Even the defendants concede that certification under rule 23(b)(3) is appropriate in this case; they state that "certification of such a defendant class appears to be the settled rule in this Court [citing *McFarland, Itel*, and *Gap Stores* ]," and add merely that "defendant underwriters wish to reserve their right to petition the court for amendment or decertification if certification is granted ..." *Opposition of Defendant Underwriters to Plaintiffs' Motion for Certification of a Defendant Underwriter Class* at 2–3.

In light of the clear case law in the Northern District of California, and the powerful facts advanced by the plaintiffs, the court finds that common questions of law and fact predominate over the individual questions that may arise in this litigation. Furthermore, given the complexity of this litigation in terms of the numbers of parties and the inherent efficiency of the class action mechanism, the court finds that the class action mechanism is superior to other available methods of adjudicating this dispute.

Accordingly, the court certifies the section 11 defendant class under rule 23(b)(3).

## B. Certification of Section 12 Class Under Rule 23(b)(1)

■■■ The certification of the section 12 defendant class is the most hotly contested issue before the court. The defendant underwriters contend that the section 12 claim—which for certification purposes is limited to the discrete issue of whether the Registration Statement and Prospectus were materially false or misleading—is certifiable, if at all, only as a 23(b)(3) class. The plaintiffs disagree and note several cases in which a section 12 claim limited to this single issue was certified as a (b)(1) class. *McFarland*, 96 F.R.D. at 366; *Itel*, 89 F.R.D. at 127; *In re Nucorp Energy Securities Litigation*, M.D.L. No. 514 (S.D. Cal. March 7, 1983); *Steinberg v. Chem-Tronics, Inc.*, No. 81–1190 S(m) (S.D.Cal. May 11, 1982).

For the reasons outlined below, the court finds that the defendants are correct in arguing that the section 12 defendant class is certifiable only under rule 23(b)(3). This court is of the opinion that certification under 23(b)(1) is inappropriate.

### 1. Requirements of rule 23(a)

Before reaching the critical question of whether the class is certifiable under 23(b)(1) or (b)(3), the court must once again ensure that the putative class comports with the requirements of rule 23(a). However, there is no need to reiterate in painstaking detail these four requirements; as

the section 12 class is composed of precisely the same parties as the section 11 class, and as the section 12 claim is limited to a single issue for certification purposes, the court concludes that the numerosity, commonality, typicality, and adequacy tests have been met.

### 2. Certification under 23(b)(1) or (b)(3)

The plaintiffs seek the certification of the defendant underwriter class under 23(b)(1)(A). From the tactical perspective of the plaintiffs, a (b)(1) certification is desirable because it does not contain the class 'opt-out' provision inherent in a (b)(3) certification nor does it carry with it the same notice requirements. In support of their contention that certification under (b)(1)(A) is appropriate here, the plaintiffs point to four cases—*McFarland, Itel, Nucorp Energy,* and *Steinberg*—in which (b)(1)(A) classes were certified against defendant underwriters.

The defendants concede, as they must, that these four courts did certify (b)(1)(A) defendant classes. In asking this court to take a different approach, the defendants argue quite convincingly, however, that *Itel* was decided incorrectly and that the other three cases simply followed *Itel* without individually analyzing the problem. Accordingly, the defendants urge this court not to follow *Itel* and its progeny, but to re-examine this question for itself.

The crucial issue that the court must assess is whether certification of this defendant class would lead, in the terms of rule 23(b)(1)(A), to

inconsistent or varying adjudications with respect to individual members of the class *which would establish incompatible standards of conduct* for the party opposing the class.

(emphasis supplied).

The defendants argue that a (b)(1)(A) class certification would be inappropriate here because there is no risk at all that "incompatible standards of conduct" will be required of the party opposing the class (i.e., the plaintiffs). Although there might

be a risk of inconsistent judgments if no defendant class was certified at all, the court cannot be misled by that possibility. The question here is not whether a section 12 class should be certified *at all;* it is whether a (b)(1) or (b)(3) format is most appropriate.

In this situation, it is difficult to see how rule 23(b)(1)(A)'s requirement of "incompatible standards of conduct" can be met. At worst, if no class were certified at all, the plaintiffs might face the possibility of recovering against all the defendants on the section 11 claim, while only recovering against some of the individual defendants on the section 12 claim. Admittedly, this might lead to anomalous results, but it does not lead to the "incompatible standards of conduct" that is the focus of rule 23(b)(1)(A). The language of the rule simply cannot be interpreted to authorize the certification of this section 12 defendant class.

In *McDonnell Douglas Corp. v. United States District Court*, 523 F.2d 1083 (9th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), the Ninth Circuit addressed this precise question. In analyzing rule 23(b)(1)(A), the *McDonnell Douglas* court emphasized that the rule "was not intended to permit class actions simply when separate actions would raise the same question of law." *Id.* at 1086. The Ninth Circuit conceded that separate actions "could reach inconsistent results" and even admitted that "inconsistent resolutions of the same question of law might establish 'incompatible standards of conduct' in the sense of different legal rules governing the same conduct." *Id.* But the court stressed that (b)(1)(A) should not be read so broadly as to subsume that situation because to do so "would be to render superfluous the detailed provisions of subdivision (b)(3)." *Id.* As was the case in *McDonnell Douglas*, certification under (b)(1)(A) is not appropriate for the section 12 defendant class here.

This court is aware that *Itel* employed rule 23(b)(1)(A) to certify a similarly situated defendant class. The *McFarland, Nu-*

*corp Energy,* and *Steinberg* courts adopted the same approach. The *Itel* court apparently chose to certify this defendant class under (b)(1)(A) for reasons of judicial efficiency, *see* 89 F.R.D. at 124, 125–26, and because the court perceived that it had no other certification options open to it. The *Itel* court seemingly interpreted Judge Williams' decision in *Gap Stores* as barring certification of all types of section 12 defendant classes under rule 23(b)(3). *See* 89 F.R.D. at 123. Thus, the *Itel* court apparently concluded that as a (b)(3) certification was not a viable option, considerations of judicial efficiency and equity required that the limited section 12 class be certified under (b)(1).

Although this court concurs with the conclusion in *Itel* that certification was necessary and desirable, *see Itel*, 89 F.R.D. at 124, the court disagrees that *Gap Stores* proscribed certification of a limited section 12 claim under rule 23(b)(3). In this court's opinion, *Itel* could have distinguished *Gap Stores* on the following grounds. The section 12 claim in *Itel* (like the section 12 claim now before this court) only involved the *single* issue of whether the offering materials were materially misleading. *Gap Stores*, on the other hand, involved a section 12 claim that raised *all* of the relevant issues under that section of the securities laws. As such, the much more complicated section 12 claim in *Gap Stores* required proof of privity between all purchasers and all sellers.

This privity requirement alone was a sufficient reason for denying class certification in *Gap Stores* because, under *La Mar v. H & B Novelty and Loan Co.*, 489 F.2d 461 (9th Cir.1977), all named plaintiffs must have a cause of action against all members of the defendant class in order to merit class certification. *See also In re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973). Thus, because the plaintiffs in *Gap Stores* could not demonstrate that all plaintiffs had a viable section 12 claim against all defendants, the court properly refused to certify the (b)(3) defendant class sought by the plaintiffs.

Presumably to avoid this problem, the plaintiffs in *Itel* narrowed their section 12 claim to the single issue of material misrepresentations in the offering documents. *See* 89 F.R.D. at 123. As such, this claim was perfectly appropriate for certification under (b)(3). The plaintiffs in this action have also narrowed their section 12 claim to a single issue and the court declines to follow the approach of the *Itel* court.

As the section 12 claim before this court focuses on the single issue of material misrepresentation or omission in the offering materials, the court concludes that the common questions of law and fact predominate over individual questions. Furthermore, considerations of judicial efficiency militate in favor of using the class action mechanism. The court therefore concludes that employing the ·class action device is the superior mode for adjudicating this issue.

Accordingly, the court concludes that the section 12 defendant class shall be certified under rule 23(b)(3).

### NOTICE

The plaintiffs are directed to prepare, for the court's approval, the documents to be used in notifying the members of the various classes of the court's certification orders.

### DISCOVERY CONFERENCE

There will be a discovery conference in this action, to be held in accordance with Federal Rule of Civil Procedure 26(f), on June 25, 1984, at 2:30 p.m., in Courtroom 12, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.

IT IS SO ORDERED.