**William B. WEINBERGER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**John M. THORNTON, et al., Defendants.**

**Ronald KASSOVER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**John M. THORNTON, et al., Defendants.**

Civ. Nos. 86–628–E(IEG), 86–1039–E(IEG).

United States District Court, S.D. California.

Nov. 12, 1986.

William S. Lerach, Leonard B. Simon, Joyce Fitzpatrick, Milberg, Weiss, Bershad, Specthrie & Lerach, James D. Baskin, III, Sheryl Serreze, Hill & Baskin, San Diego, Cal., Samuel P. Sporn, Schoengold & Sporn, P.C., New York City, for plaintiff.

David E. Monahan, Browning E. Marean, Edward J. McIntyre, Charles L. Deem, Gray, Cary, Ames and Frye, San Diego, Cal., for defendants.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### PROCEDURAL BACKGROUND

Plaintiffs move for an order certifying a class of securities purchasers who were allegedly defrauded by defendants during a period extending from November 1, 1982, to June 25, 1984. The instant action represents a consolidation (by parties' stipulation dated July 21, 1986) of separate but virtually identical complaints filed earlier this year by plaintiffs William Weinberger and Ronald Kassover.

On March 13, 1986, Weinberger filed a class action complaint on behalf of all purchasers of Wavetek Corporation ("Wave-

tek" or "Company") common stock between November 1, 1982, and June 25, 1984 (the proposed "Class Period"). Weinberger alleged three substantive claims:

1) violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder;

2) violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a);

3) negligent misrepresentation.

Weinberger contended that the Company, its officers and directors (the "individual defendants") and two underwriters conspired to inflate artificially the market price of Wavetek stock through misleading statements in annual and quarterly reports, press releases, and a prospectus and registration statement which was filed in connection with a June 1983 public offering of 1,700,000 shares.

Wavetek, the individual defendants, and the underwriters separately moved this court to dismiss Weinberger's complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. In a Memorandum Decision dated June 23, 1986, this court granted the underwriters' motion to dismiss, but denied the motions of the Company and individual defendants.

Plaintiff Kassover filed his complaint on April 28, 1986. He alleged the same course of fraudulent conduct, and raised the same substantive claims as Weinberger. On July 29, 1986, the *Kassover* case was transferred from the docket of Judge Brewster via the local "low number rule," the two actions having been consolidated on July 21.

## STATEMENT OF FACTS

Wavetek is an electronics firm based in San Diego. According to the complaint, in November 1982 Wavetek began to issue misleading statements and projections which were designed to inflate the price of Wavetek stock in anticipation of a June 17, 1983 public offering. Plaintiffs allege that defendants carefully disseminated information which created the appearance that Wavetek, which had consistently reported growth and increasing profits through fis-

cal 1983, would continue to grow and be profitable. Plaintiffs further allege that defendants suppressed facts about Wavetek's uncertain and perhaps unhealthy future. The individual defendants allegedly were privy to adverse information about the company's operations, finances and business prospects, and aided and abetted Wavetek's misinformation campaign.

On June 17, 1983, a public offering of 1,700,000 shares of Wavetek common stock raised $30,000,000 and garnered fees of $1,700,000 for the underwriting syndicate. At the time of the offering, 7,200,000 shares of Wavetek stock were already outstanding and were being traded on the over-the-counter market.

In January 1984, the Company reported a modest decline in earnings, which it attributed to matters then under control. Record revenues were projected. In June 1984, however, the Company revealed significant problems of finances, management and marketing; it then admitted that its prospects were deteriorating. The price of Wavetek stock, which had shown a slow but steady decline beginning in about late January 1984, fell to $5¾. (The price had peaked during the Class Period at $18¼; the price at the June 1983 public offering was $17¾.) Wavetek soon suffered and disclosed a variety of business ailments, including declining revenues, increasing losses, lay-offs, resignation of top-level officers, the elimination of once-promising divisions, and writedowns for excessive inventories and excessive goodwill. This downturn culminated in a 1985 loss of $14,-300,000, or $1.58 per share. (This compares with 1983's record earnings of $4,600,000, or $.60 per share.)

Plaintiffs finally allege that four of the individual defendants sold Wavetek stock heavily during the Class Period, grossing approximately $785,000.

## DISCUSSION

### I. *Rule 23(a)*

Motions for class certification proceed under Rule 23 of the Federal Rules of Civil

Procedure. Rule 23(a) contains the first set of requirements for class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a) (West 1986).

As plaintiffs properly point out, Ninth Circuit decisions favor a liberal use of class actions to enforce federal securities laws. *See, e.g., Arthur Young and Co. v. United States District Court,* 549 F.2d 686 (9th Cir.1977), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977); *Blackie v. Barrack;* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). In *Schwartz v. Harp,* 108 F.R.D. 279, 281 (C.D.Cal.1985), Judge Rymer observed that the liberal policy "is based upon the belief that class actions are particularly suited to serving as policing weapons against corporate wrongdoing." Despite this liberal policy, however, the burden of showing compliance with Rule 23 is on the plaintiffs. For the reasons explained below, this court finds that plaintiffs have satisfied the Rule 23(a) requirements, and therefore warrant inquiry under Rule 23(b) (discussed *infra* ).

■ (a) NUMEROSITY—At the time of the June public offering, 7,200,000 shares of Wavetek stock were outstanding. Presumably many of these shares were traded in the seven months of the Class Period prior to June 1983; moreover, as defendants have shown, active open market trading of Wavetek stock continued through the second quarter of 1984. In addition, some 1,700,000 shares were sold at the public offering. Thus, although the exact number of purchasers is unknown at this time,[1] it is not unreasonable to suppose that the class sought to be certified numbers into the hundreds, and perhaps thousands. (Plaintiffs estimate 3000.) Because joinder of all these parties is impracticable, and in light of defendants' failure to dispute numerosity, this court finds that the numerosity requirement is met. *See, In re Victor Technologies Securities Litigation,* 102 F.R.D. 53 (N.D.Cal.1984); *see also Boykin v. Georgia Pacific Corp.,* 706 F.2d 1384 (5th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 231 (1984) (class of 317 is sufficient).

■ (b) COMMONALITY — Plaintiffs have also demonstrated the requisite degree of commonality among claims. As the Ninth Circuit recognized in *Blackie, supra,* a course of repeated misrepresentations will satisfy the commonality requirement:

Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

524 F.2d at 902. Thus, where the same scheme operates on a class of purchasers for an extended period of time, the requirement of (a)(2) will likely be satisfied. *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Schwartz, supra,* at 282.

■ In the instant case, plaintiffs allege a common course of false and misleading statements and omissions, which occurred within a twenty-month period and which encompassed a limited number of public releases and financial reports. There is no indication of material variation in what was presented to or concealed from the public

---

1. And precise enumeration of the class is not required for certification. *Schwartz, supra,* at 281.

during the Class Period. Furthermore, both initial offering purchasers and open market purchasers appear to be bound by a common interest in determining whether defendants' conduct is actionable.

■ (c) TYPICALITY—Closely related to the commonality requirement is the typicality requirement, which assures that the interests of the named representatives align with those of the class. *Jordan v. County of Los Angeles,* 669 F.2d 1311 (9th Cir.1982). In *Weinberger v. Jackson,* 102 F.R.D. 839, 844 (N.D.Cal.1984), Judge Ingram quoted *Newburg on Class Actions* for an overview of the typicality requirement:

> Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.

*Quoting* 5 *Newburg on Class Actions,* § 8816, at 850 (1977). Judge Rymer offered further clarification in *Schwartz, supra:* "A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." 108 F.R.D. at 282. Judge Rymer continued:

> The test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Id.* The requirement of typicality does not mean that all claims must be identical. *Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 74 (N.D.Tex.1984).

Defendants argue that Kassover's claim is not typical of those who purchased on the open market and, likewise, that Weinberger's is not typical of those who bought at the public offering. For this reason, according to defendants, Kassover and Weinberger ought not to represent a single class. Rather, they should represent subclasses (if a class, is to be certified at all). Defendants do not directly challenge the typicality of Weinberger's open market claim or the typicality of Kassover's public offering claim.

■ Upon careful consideration, this court rejects defendants' arguments against typicality. When seen in light of *Blackie's* liberal approach to certification, the case law supports the conclusion that, together, Weinberger and Kassover *can* present claims typical of all allegedly defrauded purchasers.

■ At the outset, it must be noted that similarity of *reliance* on the part of the aggrieved investors is not required in order to establish typicality. *Blackie,* 524 F.2d at 905–906; *In re Diasonics Securities Litigation,* 599 F.Supp. 447, 452 (N.D.Cal. 1984). Nor does typicality require uniformity of *damages.* Damage awards sought by plaintiffs will almost certainly vary. *Blackie,* 524 F.2d at 905; *Victor Technologies,* 102 F.R.D. at 56. As Judge Williams observed in *In re Memorex Securities Cases,* 61 F.R.D. 88, 103 (N.D.Cal.1973), "To deny a class determination on the ground that the computation of damages might render the case unmanageable would encourage corporations to commit grand acts of fraud instead of small ones with the thought of raising the spectre of unmanageability to defeat the class action."

Other common challenges to typicality are that a plaintiff is either too "unsophisticated" (*McFarland v. Memorex Corp.,* 96 F.R.D. 357, 363 (N.D.Cal.1982)) or too unfamiliar with the content of the litigation (*Diasonics, supra*). Defendants in the instant case, while not fashioning their argument in "typicality" terms, nonetheless do allege that Weinberger cannot represent those who purchased at the public offering because, among other things, he never even saw the purportedly misleading prospectus which was prepared for the offer-

ing. But a lack of familiarity with some aspects of a co-plaintiff's case will not, in itself, defeat typicality. In *Diasonics*, Judge Peckham required only the plaintiff's "familiarity with [the] outlines" of the action. 599 F.Supp. at 452. He found no Ninth Circuit requirement that class representatives personally investigate other plaintiffs' allegations. In any case, defendants here have not shown that Weinberger or Kassover is either too unsophisticated or too ignorant to press typical claims.[2]

■ Defendants do contend that Weinberger and Kassover ought not to represent the same class because Kassover, as a public offering purchaser, has a potential claim under Section 11 of the 1933 Securities Act, a statute which, because it does not demand proof of reliance, causation, or scienter, is more easily invoked than Section 10(b) or Rule 10b–5. In *MacFarland, supra,* Judge Ingram was not persuaded by such a challenge to typicality, reasoning that a class representative is unlikely to drop Section 10(b) or Rule 10b–5 claims simply because he or she can more readily prove a Section 11 claim. 96 F.R.D. at 363. In Judge Ingram's estimation, the availability of alternative legal recourse did not hamper a class representative's ability to pursue claims typical of those of other class members. Here, there is no danger of inadequate representation, because Weinberger will surely oversee the Section 10(b) and Rule 10b–5 claims that Kassover might neglect. Moreover, as plaintiffs have pointed out in their reply memo, Kassover (and those similarly situated) has forfeited his Section 11 claim anyway, because the applicable statute of limitations on such a claim ran many months before this action was filed. The possibility Section 11 claims being brought in a subsequent action is thus avoided.

■ Defendants' general argument that open market purchasers should not be classified with public offering purchasers is rebutted by several cases in which courts have certified a class encompassing several types of purchasers. In *Cameron v. E.M. Adams Co.,* 547 F.2d 473 (9th Cir.1976), the Ninth Circuit *re* certified a plaintiff class which included both public offering and aftermarket buyers. In *Weinberger, supra,* Judge Ingram certified a class which included public offering purchasers as well as aftermarket purchasers. 102 F.R.D. at 842. And, quoting *Weinberger,* Judge Patel stated in *In re Activision Securities Litigation,* 621 F.Supp. 415, 433 (N.D.Cal. 1985), "[I]t is no barrier that [a] plaintiff may have purchased ... stock pursuant to the initial offering yet he seeks to represent purchasers in the aftermarket." *See also Victor Technologies, supra* (certified class includes public offering purchasers and aftermarket purchasers). Although defendants might argue that the present case is distinguishable because the single class would include beforemarket purchasers as well as those of the aftermarket, the cases seem to overlook such subtle distinctions and allow certification where a set of plaintiffs alleges an ongoing scheme of misrepresentation.

In the instant case, such an ongoing scheme has been alleged. Kassover and Weinberger have complained of similar injuries, which in turn are similar to those of proposed class members. Furthermore, this action is based upon facts which are not unique to the named plaintiffs, and the same course of conduct by defendants allegedly has caused all of the plaintiffs' injuries. This court therefore finds that plaintiffs have demonstrated typicality sufficient to satisfy Rule 23(a)(3).

■ (d) ADEQUACY OF REPRESENTATION—The final requirement of Rule 23(a) is usually understood to call for two showings: (1) that the interests of the class representative coincide with those of the class, and (2) that the representative be able to prosecute the action vigorously. *Jordan,* 669 F.2d at 1321. To make the

---

**2.** Indeed, defendants argue the contrary proposition that Weinberger is a professional plaintiff and is therefore a poor choice for representative (his attention being stretched too thin over numerous cases). *See* the discussion *infra,* p. 604.

first showing, a class representative must demonstrate that there is no antagonism among the claims of the various (named or absent) plaintiffs. To make the second showing, the representative must demonstrate adequacy of counsel.

Defendants have not argued that the claims of Weinberger or Kassover are antagonistic to those of other plaintiffs. And, in light of the discussion of "typicality" above, the claims do not seem to be antagonistic.

Nor have defendants challenged the adequacy of plaintiffs' counsel, who are well-known securities law specialists. In fact, the same counsel were adjudged adequate in the above-referenced cases of *Schwartz, Diasonics, Activision,* and *Weinberger.* In three of these cases, William Weinberger himself was approved as class representative. In *Weinberger,* Judge Ingram specifically answered a variety of challenges to Weinberger's adequacy (many of which could be repeated by defendants here).

On the basis of the foregoing discussion, this court finds that plaintiffs have satisfied all four requirements of Rule 23(a).

## II. *Rule 23(b)*

The second step in certification of a class is compliance with Rule 23(b), which provides, in part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \* \* \* \* \* \*
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b) (West 1986). Defendants have not squarely addressed the Rule 23(b) issues of predominance and superiority. Moreover, as developed below, this court finds that plaintiffs have made satisfactory Rule 23(b) showings anyway.

■ (a) PREDOMINANCE OF COMMON ISSUES—It is difficult to distinguish this requirement from the Rule 23(a)(2) and (3) requirements of commonality and typicality. As was established above, common questions do seem to be at the heart of this litigation. Plaintiffs have alleged that the underlying activities of the defendants affected all members of the proposed class in the same manner. That is, all of the purchasers allegedly bought Wavetek stock at a price which was inflated by defendants' wrongful conduct. The fact that some bought on the open market and some at the public offering is peripheral to the core concern of this case—whether defendants violated federal securities law.

■ (b) SUPERIORITY OF A CLASS ACTION—Again, given the discussion above and defendants' failure to contest this point, the requirement of superiority is easily met. The recognized purpose of the class action is to provide a mode of relief to those who have been injured by a fraudulent scheme such as that alleged here. Furthermore, in cases such as this, class actions appear to be both cost-effective and manageable. Many courts have affirmed the superiority of class actions in securities fraud cases. *See generally* 7B Wright, Miller and Kane, *Federal Practice and Procedure* § 1781 (1986).

## III. *Limiting the Class*

Two issues remain regarding class certification: (1) What should be the time limits of the class? (2) May be class be certified for the pendent state law claim of negligent misrepresentation?

(a) TIME LIMITS—Defendants spend much of their opposition memo arguing that the duration of the proposed Class Period is too long. Defendants maintain that the Kassover purchase was "materially different" from that of Weinberger. Therefore, according to defendants, Kassover may only represent public offering purchasers. In addition, defendants contend that Weinberger's class should begin

sometime after November 1982, and end sometime before June 1984.

To support their arguments, defendants offer data purporting to show that the alleged conspiracy had very little effect until April 1983, when the price of Wavetek stock rose sharply; the Class Period should therefore begin at that time. Defendants further point out that adverse facts about Wavetek surfaced in December 1983 and January 1984, and that the disclosure of these facts was "curative." Therefore, according to defendants, purchasers who bought after January 1984 were put on notice of the company's possibly failing health. They were thus not the victims of a conspiracy or fraud plot.

In response, plaintiffs correctly note that arguments about the commencement and termination dates of a proposed class period raise questions of fact going to the merits, and are therefore not a proper subject for inquiry at the certification stage. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). In *In re Wickes Cos., Inc.,* M.D.L. No. 513 (S.D.Cal.1983), this court cited the Second Circuit for the proposition that "it would be improper for a district court to resolve substantial questions of fact going to the merits when deciding the scope or time limits of the class." *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 572 (2d Cir.1982), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 170 (1982). The *Victor Technologies* and *Weinberger* cases cited above drew similar conclusions. Therefore, this court must, at this stage of the proceedings, accept the proposed time limits of the Class Period. They will be adjusted, if necessary, by the trier of fact.

(b) PENDENT STATE LAW CLAIM— Plaintiffs also seek class certification for the purposes of their pendent state law claim of negligent misrepresentation. Defendants have not challenged certification for the state law claim. In any case, much recent precedent supports plaintiffs on this point. *See, e.g., Activision, supra; Diasonics, supra; Victor Technologies, su-pra; Wickes, supra.* The class should therefore be certified for purposes of the pendent state law claim of negligent misrepresentation.

