**In re DIASONICS SECURITIES LITIGATION. This document relates to: ALL ACTIONS.**

**No. C-83-4584 RFP.**

United States District Court, N.D. California.

Sept. 21, 1984.

David B. Gold, Paul F. Bennett, John W. Allured, Law Offices of David B. Gold, P.C., William S. Lerach, Keith F. Park, Margaret G. Dobies, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., Arthur N. Abbey, Ralph L. Ellis, Abbey & Ellis, New York City, for plaintiffs.

William I. Edlund, Parker A. Maddux, Karen J. Wegner, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants.

Michael F. Perlis, Pamela J. Kreuzberger, Pettit & Martin, San Francisco, Cal., for defendants Arthur Rock and Robert Noyce.

M. Laurence Popofsky, Michael L. Rugen, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant underwriters L.F. Rothschild, Unterberg, Towbin, F. Eberstadt & Co., Inc. and Hambrecht & Quist, Inc.

William I. Edlund, Parker A. Maddux, Karen J. Wegner, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants Diasonics, Inc., Albert Waxman, Walter Stafford, Leonard Perrone and Anthony DePalma.

## OPINION

PECKHAM, Chief Judge.

This complex securities action involves numerous claims raised by various plaintiffs against Diasonics, Inc. ("Diasonics"), certain of its officers and directors ("individual defendants"), and the co-lead underwriters (F. Eberstadt & Co., Inc.; L.F. Rothschild, Unterberg, Towbin; and Hambrecht & Quist, Inc.) ("underwriters"). All

defendants are alleged to have participated in the issuance of a materially misleading Registration Statement and Prospectus. The plaintiffs allege that as a result of materially misleading statements and omissions in these documents, Diasonics' common stock was traded at artificially high prices and that the plaintiffs were consequently damaged.

Both the plaintiffs and the defendants raise various motions. They are:

(1) plaintiffs' motion to certify a plaintiff class;

(2) plaintiff Rothenberg's motion to certify a separate section 10(b) class;

(3) plaintiffs' motion to certify a defendant underwriter class; and

(4) defendants' motions for partial dismissal (which includes several sub-motions).

## FACTUAL BACKGROUND

Diasonics, a California corporation with its principal place of business in Milpitas, California, develops, manufactures, markets, and services medical diagnostic imaging systems. These sophisticated computer-based X-ray and ultrasound systems are used by physicians in hospitals, clinics, and private practice.

On February 23, 1983, Diasonics commenced its initial public offering of 5,588,000 shares of common stock at an offering price of $22.00 per share. This public offering was made pursuant to a Registration Statement and Prospectus filed with the Securities and Exchange Commission, effective February 23, 1983. Plaintiffs allege that this Registration Statement and Prospectus were materially false and misleading. Specifically, plaintiffs contend that these documents overvalued Diasonics' assets and understated certain delivery and sales problems.

On September 22, 1983, Diasonics first revealed through a press release that it expected a pre-tax loss of $10–14 million for the third quarter of 1983. This expected loss was attributed to a decline in the profitability of its ultrasound and digital X-ray business. On January 31, 1984, Diasonics revealed that it expected a total pre-tax loss of between $60–65 million for the year ending December 31, 1983.

Following these two disclosures, the value of Diasonics' stock declined precipitously. By late September, 1983, following the first press release, the price of a share of Diasonics' common was $9⅛ bid; by February, 1984, the price had declined to between $4–5 per share.

The plaintiffs have now filed the instant action and allege various statutory and common law claims. In specific, the plaintiffs seek relief under: section 11 of the Securities Act of 1933, 15 U.S.C. § 77k; section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l; sections 17(a)(2) and (a)(3) of the Securities Act of 1933, 15 U.S.C. § 77q; section 10(b) of the Securities Act of 1934 and Rule 10b–5, 15 U.S.C. § 78j(b); section 25400 *et seq.* of the California Corporations Code; and common law theories of fraud, deceit, and negligent misrepresentation.

## DISCUSSION

### I. *Plaintiffs' Motion to Certify a Plaintiff Class*

The plaintiffs seek the certification under Fed.R.Civ.P. 23(b)(3) of the following plaintiff class:

All persons and entities, other than defendants, who purchased the common stock of defendant Diasonics, Inc. from February 23, 1983 through January 31, 1984, inclusive.

Certification of a class under rule 23 requires that the putative class meet the four requirements of rule 23(a) and that it qualify under one of the three subdivisions of rule 23(b).

### A. *Prerequisites under rule 23(a)*

Rule 23(a) sets out the first aspect of class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ The defendants do not dispute that rule 23(a)'s requirement of numerosity has been met here. As this securities action involves, potentially, hundreds of class members, the court finds that the numerosity requirement has been satisfied.

■ Similarly, the defendants do not challenge the "commonality" requirement of rule 23(a). The misrepresentations alleged by the plaintiffs fit within a common course of conduct. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir.1964); *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The court finds that the "common questions of law or fact" requirement has been satisfied.

The defendants do not concede, however, that the remaining two requirements of "typicality" and "adequacy of representation" have been met by all of the named representatives. Specifically, the defendants contend that the claims of various named plaintiffs are not typical of the other class members. Significantly, the defendants do not maintain that *all* named representatives are inadequate under the rule; they merely contend that seven of the thirteen named plaintiffs have atypical claims and cannot serve as class representatives.

There are two possible responses to this allegation. First, the court could merely accept at face value the defendants' contentions and certify the class using only the unchallenged class representatives.[1] Second, the court could review the challenges to each of the seven named class members. In terms of the overall certification motion, it matters little which course the court

chooses; the outcome on the underlying plaintiff class certification will remain the same. Even if the court were to strike some or all of the seven challenged class representatives, certification of the plaintiff class would still be proper. However, it may be that the defendants' challenges, if legitimate, could affect the management of this action and hence the court deems it appropriate to consider each of the defendants' challenges.

These challenges to the seven named representatives fall into three generic areas. First, the defendants claim that the putative class representatives cannot establish that they "relied" upon any material misrepresentation and are therefore distinguishable from other members of the class who allegedly did rely. This is a "typicality" challenge. Second, the defendants contend that certain of the named representatives appear to be uninformed about the intricacies and implications of their action. Finally, the defendants argue that certain of the named representatives reside in districts (or countries) far from the locus of this action and will therefore be unable to monitor this litigation on behalf of the class. These last two challenges raise issues of "adequacy."

■ Before addressing each of these contentions, it is worth noting that the defendants' concern over the typicality and adequacy of the plaintiffs' class representatives is somewhat problematic. As the Seventh Circuit has stated:

it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether the "representative parties will fairly and adequately protect the interests of the class," ... it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

---

1. The defendants have had an opportunity to review the "typicality" and "adequacy" of the six named class representatives who have not been challenged. All of the six have answered two sets of interrogatories; at least three of the six have been deposed by the defendants.

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981), *cert. denied sub nom. Chicago Journeymen Plumbers' Local Union No. 130 v. Plummer*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). *See also Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 275 (E.D.Pa.1975). Nevertheless, the special supervisory role that a court plays in class actions requires this court to scrutinize carefully the ability of named representatives to mount typical claims and to represent the interests of the class adequately and fairly; "it is an essential prerequisite to the right to maintain an action under Rule 23 that the court be certain the representatives will adequately protect the interests of all class members." 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 at 620 (1972).

■ The first challenge presented by the defendants is that certain of the named plaintiffs did not rely upon the material misrepresentations allegedly made in Diasonics' Registration Statement and Prospectus when they purchased their Diasonics stock. This allegation of a disabling non-reliance apparently applies to both the section 11 and the section 12(2) claims made under the Securities Acts of 1933, 15 U.S.C. §§ 77k, 77*l* (2), and the section 10(b) claim made under the Securities Act of 1934, 15 U.S.C. § 78j(b). In essence, the defendants contend that these named class representatives will become involved in a peripheral dispute defending against their alleged non-reliance and will fail to prosecute the underlying action with appropriate vigor.

The defendants' concern for the success of the silent majority of the class, while perhaps noble, is misplaced. There is no requirement in the Ninth Circuit that a plaintiff's reliance must be established for either a section 11 claim or a section 12(2) claim, *see, e.g. In re Gap Stores Securities Litigation*, 79 F.R.D. 283, 297, 306 (N.D. Cal.1978), or a section 10(b) claim, *see Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1283–84 (9th Cir.1982); *Arthur Young & Co. v. United States District Court*, 549 F.2d 686, 694–95 (9th Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977).[2]

As there is no reliance requirement in the Ninth Circuit, the defendants' contention that the named representatives are atypical because they did not rely is unavailing. The putative class representatives cannot be disqualified on this ground.[3]

■ As a second ground for challenging the typicality and adequacy of the named plaintiffs, the defendants contend that certain representatives are too unfamiliar with the content of the litigation to supervise the action properly. In specific, the defendants contend that Bernard Frankel, William Weinberger, Richard and Phyllis DeVilla, Arnold and Marilyn Mitchell, Jerome and Marilyn Silverman, Tilly Gaillard and Louis Berg all failed to perform a personal investigation into the allegations of material misrepresentation contained in the complaint. However, the defendants have cited no Ninth Circuit case law holding that such an investigation is mandatory before an individual can assume the role of

2. The court expresses no opinion on the defendants' opportunity to prove non-reliance through a rebuttal argument, i.e., by demonstrating that a particular investor would not have acted differently had he known of the alleged misrepresentation or omission. *See Bell v. Cameron Meadows Land Co.*, 669 F.2d at 1284 n. 11; *Blackie v. Barrack*, 524 F.2d at 906–7 n. 22. Such a showing, if made, would in fact serve as a defense to the § 10(b) claim. No such evidence has been suggested to date in either the defendants' moving papers or the voluminous declarations simultaneously submitted.

3. If it develops during the course of this litigation that the defendants' rebuttal argument appears to be grounded in something more than speculation, *see supra*, note 2, it may be appropriate at that time to create a subclass consisting of those plaintiffs who must confront this rebuttal argument. Fed.R.Civ.P. 23(c)(1). Any discussion of subclasses remains, however, speculative at this time.

class representative.[4] Although some of the named representatives conceded during their depositions that they did not understand all of the intricacies of this action, all have demonstrated a familiarity with its outlines. The certification of the class with these individuals as the named representatives cannot be denied on this ground.

■ Third, the defendants also contend that Gaillard and Berg would be inadequate class representatives because they reside outside the United States. (Gaillard apparently resides in France; Berg resides in Israel.) This alleged inadequacy is phrased in general terms; the defendants have pointed to no specific acts or omissions on the part of these individuals that suggest an inability to perform as class representatives. And as the court noted in *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 487 (N.D.Cal.1978), "[i]t is entirely possible that an enthusiastic plaintiff residing at some distance from the other class members and from the forum could, by letter, telephone, or personal visit participate in the conduct of the litigation to an equal or greater extent than a local plaintiff." In the absence of evidence demonstrating an inability to serve as competent class counsel, the court will not exclude either Gaillard or Berg on this ground.

■ As a final matter, the defendants note that two of the named representatives cannot serve as class representatives because they purchased Diasonics stock in some capacity other than as an individual.[5] This issue, to the extent that it is a disabling defect, can be remedied by an amendment to the complaint that clarifies who the purchasing party actually was and in what capacity they were acting. This objection is not sufficient to warrant a denial of class certification, provided that the appropriate amendment is made.

Thus, the court finds that the claims of the seven challenged class representatives

are typical and that their representation of the class will be adequate. Furthermore, the court finds that the counsel for the putative class can competently undertake this litigation and that no disabling conflicts exist among either class members or counsel. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

In conclusion, the court finds that all four of the rule 23(a) requirements have been met. It is conceded by the defendants that the class in general meets the requirements; the only objections raised by the defendants concerns seven of the thirteen named representatives. The court finds these objections without merit.

*B. Prerequisites under rule 23(b)*

Under rule 23, once the four prerequisites of 23(a) have been satisfied, the putative class must also qualify under one of the three provisions of rule 23(b). In this action, the plaintiffs seek certification under rule 23(b)(3). The defendants do not oppose certification under rule 23(b)(3).

■ After reviewing all of the documents submitted by counsel, the court concludes that certification under rule 23(b)(3) is proper because common questions of law and fact predominate over any questions affecting individual class members. *See Blackie v. Barrack*, 524 F.2d at 905–8. Furthermore, the court concludes that the class action format represents the most efficient means of litigating and adjudicating this dispute. Maintenance and management of this action in the class action format appears desirable.

Accordingly, the court will certify the plaintiff class under rule 23(b)(3) with the following individuals as class representatives, provided the necessary amendments are made to reflect the actual capacity of each representative: Harold Zarowitz; Wil-

---

**4.** The court offers no opinion on what type of investigation is required by counsel under the new terms of Fed.R.Civ.P. 11. That issue, not presently before this court, is distinguishable from the question of what type of investigation

a putative class representative must conduct before serving as class representative.

**5.** This ruling applies to plaintiffs Bernard Frankel and Jerome Silverman.

liam B. Weinberger; Jerome Silverman and Melvin Silverman, Co-Trustees of the Morton's Jemel Corp. Pension & Fund; Nessim Husni; Arnold and Marilyn Mitchell; Richard and Phyllis De Villa; Bernard Frankel; Tilly Gaillard; Louis L. Berg; Steven Rubin; David Niroo; Elizabeth Bennett; and Julius Levine.[6]

## II. *Plaintiff Rothenberg's Motion to Certify Separate § 10(b) Class*

■ Plaintiff Rothenberg seeks to certify a separate § 10(b) class with himself as lead plaintiff. Both the other plaintiffs and the defendants oppose Rothenberg's motion. The merits of this motion are straightforward and the court denies Rothenberg's motion.

Rothenberg seeks to certify a plaintiff class on the limited issue of § 10(b) liability on behalf of individuals who purchased Diasonics during a specific period of time: September 21, 1983 to January 31, 1984. This is a period of time shorter than that covered by the general plaintiffs' class discussed above, although it is completely subsumed within that larger class. Rothenberg contends, without delineating specific facts, that there is a conflict between those plaintiffs who purchased Diasonics stock after September 21, 1983 and those who purchased the stock before that date.[7]

The purported conflict arises, according to Rothenberg, because those who purchased after September 21 will somehow have an easier time of proving scienter and thus will be more interested in pursuing the § 10(b) claim (of which scienter is a

required element). Rothenberg implies, as a corollary, that those who purchased before September 21 will not be able to prove scienter and thus will concentrate their efforts exclusively, or predominately, on the § 11 and § 12(2) claims that do not require proof of scienter. Rothenberg concludes that a separate class is necessary to protect the § 10(b) claims of the later purchasers.

Rothenberg's argument is specious. The Ninth Circuit has explicitly rejected the suggestion that there is an incipient conflict between early purchasers and later purchasers in a stock offering. *Blackie v. Barrack, supra,* 524 F.2d at 908–10. *See also Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 100 (S.D.N.Y.1981); *In re United States Financial Securities Litigation,* 64 F.R.D. 443, 452 (S.D.Cal.1974).

There is no need to certify an additional plaintiff class to protect the interests of the later purchasers. "[I]t is unrealistic to think that the common lawyer for both classes will forget the fee implications of a greater recovery. While lawyers in these class suits are earning their keep as private Attorneys General, they are not seeking to minimize the recoveries which measure their fees." *Wolfson v. Solomon,* 54 F.R.D. 584, 589 (S.D.N.Y.1971). Rothenberg's hypothesis that the counsel for the general plaintiffs' class (the class covering the February 21, 1983 to January 31, 1984 period) will decide not to pursue a § 10(b) recovery is without foundation and cannot be the basis for certifying a supplementary class.

---

**6.** Since the conclusion of oral argument, the court has received several written submissions from counsel for plaintiff Richard Rothenberg, counsel for the other named plaintiffs and counsel for the defendants. This correspondence concerned Rothenberg's tardy application to be named a class representative. Although it is not clear that Rothenberg ever made a formal motion to be deemed a class representative for the general class, as distinguished from his motion to be named the class representative for a distinct subclass, *see* § II, *infra,* the court has considered this issue nonetheless.

 The court concludes that Rothenberg should not be included in the list of class representa-

tives for the general plaintiff class. Given the number of the representatives already selected and the expected adequacy of their representation, there appears to be no good reason to add to what is already a lengthy list of named representatives.

 Accordingly, the court will not name Rothenberg a class representative at this time.

**7.** The September 21, 1983 date is significant because that is when Diasonics issued its first press release. This statement predicted a 3rd quarter loss of $5–7 million. The same press release also predicted a return to profitability during the 4th quarter of 1984.

Finally, if additional reasons are necessary, Rothenberg does not appear to be an appropriate named representative for this proposed § 10(b) class. Rothenberg himself purchased stock both before and after September 21. Therefore, he would be a member of both the general plaintiff class certified above and the supplementary § 10(b) class that he proposes. To the extent that a conflict between these two classes actually exists, he himself would be subject to it. Thus, he would not be a proper named representative for this proposed class.

Thus, for all of these reasons, the court denies plaintiff Rothenberg's motion for certification of a separate § 10(b) class.

### III. *Plaintiffs' Motion to Certify a Defendant Underwriter Class*

■ The plaintiffs move to certify two separate defendant underwriter classes. Both classes consist of all underwriters who participated in the February 23, 1983 public offering of Diasonics, Inc. common stock.

The plaintiffs move, under Fed.R.Civ.P. 23(b)(3), for certification of the first class for the purpose of litigating all issues arising under the plaintiffs' section 11 claims. The second class, which the plaintiffs seek to certify under either Fed.R.Civ.P. 23(b)(1) or (b)(3), is for the purpose of litigating a single issue in their claim under section 12(2): whether the statements contained within the Diasonics Registration Statement and Prospectus were materially false and misleading.

These precise issues were exhaustively examined by this court in *In re Victor Technologies Securities Litigation*, 102 F.R.D. 53 [Current Binder] (CCH) Fed.Sec. L.Rep. ¶ 91,433 (N.D.Cal.1984). Both par-

ties concede that the issues raised in the instant case parallel exactly those raised in *Victor Technologies*. Neither side advances any new case law or even makes a new argument; both sides concur that the certification of the defendant underwriter class is controlled by the court's decision in *Victor Technologies*.

Thus, for the reasons set out at length in *Victor Technologies*, the court will certify, under rule 23(b)(3), both the general section 11 defendant underwriter class and the section 12(2) class that is limited to the single issue of false or misleading statements in the Registration Statements and Prospectus. The court finds, for both classes, that all four prerequisites of rule 23(a) have been met. Furthermore, the court finds, for both classes, that common questions of law and fact predominate over individual issues and that the class action format represents the superior method for litigating and adjudicating this dispute. All of the requirements of this rule have been met and certification of the two classes under rule 23(b)(3) is proper.

### IV. *Defendants' Motions for Partial Dismissal*

The defendants make various motions for dismissal on different aspects of the case. Each of the motions to dismiss is discussed below.

#### A. *§ 12(2) Claims*

The defendants move to dismiss various aspects of the § 12(2) claims, 15 U.S.C. § 77*l*(2), brought by the plaintiffs against various defendants.[8] The relevant language of this statute concerns the buy-sell relationship that must exist before liability attaches; it provides that any person who "offers or sells" a security "shall be liable to the person purchasing such security

---

**8.** This statute reads, in relevant part, "Any person who ... (2) offers or sells a security ..., by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances

under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him ...."

from him." *Id.* The dispute on this matter concerns the plaintiffs' purported failure to allege the proper degree of privity between the plaintiffs and various defendants. These purported failures are discussed below, according to the defendants against whom the § 12(2) claims have been raised.

*1. Plaintiffs who did not allege from whom they purchased*

■ Four named plaintiffs did not identify the seller of the stock at all. Thus, it is impossible to determine from the face of the complaint who the seller was or what the buy-sell relationship was. As Judge Patel noted in *Hudson v. Capital Management International, Inc.*, 1982–1983 (CCH) Fed.Sec.L.Rep. ¶ 99,222 at 95,903 (N.D.Cal.1982), "[p]laintiffs must also allege who they purchased from, or who had direct connection with the sale to them, in order to pursue their § 12 claims."

Thus, because four of the named plaintiffs have failed to allege exactly what the buy-sell relationship was with sufficient specificity, the court will dismiss their claims but grant them leave to amend to make the proper allegations, if possible.

*2. Claims raised against individual defendants*

Here the defendants move to dismiss, claiming that the plaintiffs have again failed to allege the requisite degree of privity between the plaintiffs and the individual defendants.

The law concerning the requisite degree of privity between buyer and seller is somewhat in flux and courts have taken two different approaches. The Third and Seventh Circuits require strict privity between buyer and seller; in such a case, title must pass directly from the putative defendant to the plaintiff before the § 12(2) claim can stand. *See, e.g., Collins v. Signetics Corp.*, 605 F.2d 110, 113 (3d Cir.1979); *Sanders v. John Nuveen & Co., Inc.*, 619 F.2d 1222, 1226 (7th Cir.1980), *cert. denied,*

450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981). The second view is broader and permits a § 12(2) claim to stand whenever the defendant, even if not the immediate seller, has been a "significant participant" in inducing the sale. *See, e.g., Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 692–93 (5th Cir. 1971).

The Ninth Circuit has, with some reservations, adopted the broader approach urged by *Hill York.* In *SEC v. Seaboard Corp.*, 677 F.2d 1289 (9th Cir.1982) ("*Admiralty Fund*"), the court stated:

> The meaning of 'seller' for purposes of § 12 has been judicially expanded beyond the person who transfers title to 'participants' in the transaction. The test is whether the injury to the defendant flowed directly and proximately from the action of the defendant.

*Id.* at 1294, *citing SEC v. Murphy*, 626 F.2d 633, 650 (9th Cir.1980); *Pharo v. Smith*, 621 F.2d 656 (5th Cir.1980), *Hill York, supra,* at 692–93.

But in a footnote to this langauge, the Ninth Circuit stated that "the broad reading of 'seller' may be in some doubt in light of recent Supreme Court cases that prescribe a strict statutory construction approach to the securities acts and reject their expansion with tort and criminal theories. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1311 n. 12 (9th Cir.1982)." 677 F.2d at 1294 n. 3. *See also id.* at n. 4. But notwithstanding this apparent reservation about the continued vitality of the "significant participation" test, the Ninth Circuit did apply this standard in *Admiralty Fund*, signalling that the test survives.[9] *See also McFarland v. Memorex Corp.*, 581 F.Supp. 878, 880 (N.D.Cal. 1984).

The court notes that if the "significant participant" test is no longer applicable, this issue loses its complexity. If strict privity

---

**9.** The defendants contend that the Ninth Circuit definitively rejected the "substantial participation" standard in *Feldman v. Simkins Industries, Inc.*, 679 F.2d 1299 (9th Cir.1982). The case does not bear such a reading. *Feldman* never discusses the substantial participation test and never cites *Admiralty Fund.* Furthermore, the facts of *Feldman* are readily distinguishable as the case there involved open market sales, not an initial public offering.

is required, the plaintiffs' claim must be dismissed because no such relationship has been alleged. But assuming that the court must analyze the problem under the *Hill York—Admiralty Fund* approach, it becomes necessary to inquire as to the level of participation alleged.

There is no doubt that the individual defendants, all of whom were officers or directors of Diasonics, were alleged to have substantially participated in various aspects of preparing the Registration Statement and Prospectus. But courts in this district have recently found this level of alleged participation insufficient to support a § 12(2) claim under *Admiralty Fund.* In *Hudson v. Capital Management International, Inc.,* 1982–1983 (CCH) Fed.Sec.L. Rep. ¶ 99,222 (N.D.Cal.1982), Judge Patel dismissed § 12 claims against defendants when the plaintiffs failed to allege actual involvement in the sales of the securities. She observed that

> seller status had to be predicated on actual participation in the selling process. Plaintiffs second amended complaint basically alleges that defendants participated in the operations of [the issuer], or opined in circulars, and that the plaintiffs relied on their participation when plaintiffs decided to buy. This is the same type of complaint the court found inadequate in the previous complaint.

*Id.* at 95,904.

Judge Patel made her position even clearer in *Deneau v. Walker,* No. C 82–3132 MHP, slip op. (N.D.Cal. Sept. 30, 1983) where she stated that courts have imposed "participant liability only on those persons who have played a substantial role in the process leading to the sales transactions at issue." *Id.* at 3. Relying upon this test, she dismissed the plaintiffs' section 12(2) claims against individual defendants who were alleged to have: (1) created the securities and created the plan for their issuance; (2) arranged for the listing on the New York Stock Exchange and made all the necessary filings with the SEC; (3) supplied the public (through the SEC materials) with the factual data necessary to

establish the legitimacy of the new securities; and (4) arranged the mechanism for the transfer of the deposit receipts. *Id.* "To find defendants liable for having participated in this sale would be tantamount to holding that a corporation participates for purposes of § 12 in every open-market transaction in its shares. This would completely undermine the privity requirement which all courts have found implicit in § 12." *Id.*

As Judge Patel suggests, even the courts that have moved away from a strict privity requirement still require significant participation in either the sale itself or in the arrangements for the sale. *See, e.g. Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.1980); *Lawler v. Gilliam,* 569 F.2d 1283, 1288 (4th Cir.1978) ("Liability [under § 12] may be imposed on any person who actively solicits an order, participates in the negotiations, or arranges the sale.")

Judge Orrick of this district has recently followed Judge Patel's reasoning. In *In re Fortune Systems,* No. C–83–3348(A) WHO, (N.D.Cal.1983), he dismissed a claim where the individual defendants were alleged to have been substantial, necessary participants and factors in the sale of the issuer's common stock to the public. He noted that the level of participation alleged was actually only participation in the preparation of the registration statement and that this was not the type of "substantial participation" required for a § 12(2) claim under *Admiralty Fund. See also Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1087–88 (N.D.Cal.1979) (Orrick, J.) *Accord Hokama v. E.F. Hutton & Co., Inc.,* 566 F.Supp. 636, 641 (C.D.Cal.1983) (Pfaelzer, J.) ("[i]f the defendant is not in literal privity with the plaintiff, his conduct must cause the sale, or he must be a motivating force behind the sale. Mere participation in the events leading up to the sale is not sufficient.")

 The court is persuaded by the approach outlined by Judge Patel in *Hudson* and *Daneau.* Although the Ninth Circuit has been somewhat cryptic about how to define the requisite level of defendant

participation, a requirement that the defendants play a substantial role in the process leading to the specific sales transaction in issue is reasonable and comports with the overall statutory scheme. The plaintiffs here merely allege that the individual defendants participated in preparing the Registration Statement and Prospectus and certain financing mechanisms; they do not allege any substantial participation by the individual defendants in the particular sales transactions. On this ground, the court will grant the defendants' motion to dismiss the plaintiffs' § 12(2) claims against the individual defendants.

■ As an alternative argument, the plaintiffs contend that even if the court finds no substantial participation in the actual sales process by the individual defendants, the court can still allow the § 12 claim to stand under an "aiding and abetting" theory. Such a contention has little force. The "aiding and abetting" theory has largely been discredited; as this court noted in *Wright v. Schock,* 571 F.Supp. 642 (N.D.Cal.1983):

> [t]here is considerable doubt that aiding and abetting liability exists at all as to section 12 violations. *See McFarland v. Memorex Corp.,* 493 F.Supp. 631, 647 (N.D.Cal.1980). The courts that have discussed aiding and abetting liability have assumed that it could not extend liability any more broadly than does the "substantial factor" test, and so have not considered it separately. *See Admiralty Fund v. Jones,* 677 F.2d at 1294 n. 4; *Stokes v. Lokken,* 644 F.2d [779] at 784–85 [ (8th Cir.1981) ]; *Pharo v. Smith,* 621 F.2d 656, 669 (5th Cir.1980).

*Id.* at 658. *See also In re Fortune Systems, supra; Hudson v. Capital Management International, supra; Hokama v. E.F. Hutton & Co., Inc., supra.* Were "aiding and abetting" claims to be allowed, it would eviscerate the "substantial participation" theory set out by the Ninth Circuit

in *Admiralty Fund.* Accordingly, the court rejects the plaintiffs' argument that the § 12(2) claims can be salvaged on an "aiding and abetting" theory.

Thus, the court will dismiss the plaintiffs' § 12(2) claims against the individual defendants on the grounds that: (1) the defendants were alleged to have participated in the preparation of the SEC materials and financing decisions but were not alleged to have played a substantial role in the actual sales process itself; and (2) there is no aiding and abetting liability available on this claim as currently pleaded. The court will dismiss the plaintiffs' § 12(2) claim against the individual defendants, but will grant leave to amend to allege any facts that can correct this pleading inadequacy.

*3. § 12(2) claims against the corporation*

■ The plaintiffs have also alleged a § 12(2) claim against the corporation. Again, the plaintiffs have not alleged that the corporation actually sold stock to any of the plaintiffs directly or that it participated substantially in the sales process itself. For all of the reasons outlined above in the discussion of § 12(2) liability for the individual defendants, the court concludes that there can be no § 12(2) liability against the corporation under this complaint as currently pleaded.

Accordingly the court will dismiss this claim, but will grant leave to amend to allege any facts that will bring the claim against the corporation within the ambit of this opinion.

*B. Plaintiffs' Claims under Section 25401 of the California Corporations Code*

■ The plaintiffs also allege that each defendant violated section 25401 of the California Corporations Code.[10] Under section 25501 of the Code, "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from him

---

**10.** This statute provides: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a materi-

al fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

or sells a security to him." The Ninth Circuit has ruled that this statute requires strict privity; "liability [is] limited to actual sellers." *Admiralty Fund v. Jones*, 677 F.2d at 1296. Lacking an allegation of such privity, the plaintiffs claim under section 25401 must be dismissed.

The plaintiffs attempt to argue that their claim survives by virtue of section 25504 (joint and several liability of principals and agent)[11] and section 25504.1 (joint and several liability of persons who assist in violations).[12] The plaintiffs' use of this statute is unavailing. Section 25504, by its terms, applies to violations of section 25501. Hence, strict privity is still required. The complaint does not make clear what either the privity or control relationships were. A blanket allegation that all defendants were agents of each other does not satisfy the strict privity requirement of the statute. The attempt to rely upon section 25504.1 is equally unavailing to the plaintiffs because their complaint fails to allege an intent to deceive or defraud as is required under the statute.[13]

Consequently, the court will dismiss the § 25401 claim against all defendants, but will grant leave to amend to allege strict privity and/or the requisite degree of control in appropriate cases.

*C. Plaintiffs' Section 11 Claim against Defendant De Palma*[14]

■ Both the plaintiffs and the defendants raise numerous issues concerning De Palma's susceptibility to suit under section 11 of the Securities Act. There is no need to discuss all of these arguments because the plaintiffs have stated at least one valid claim when they alleged that De Palma was a "controlling person," liable under §§ 11 and 15.

Section 15 of the Securities Act of 1933 provides for "secondary liability" for "every person who, by or through stock ownership, agency, or otherwise, . . ., controls any person liable under [§ 11] or [§ 12] . . . ." 15 U.S.C. § 77o. Control has been defined as the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2. *See Safeway Portland Employees' Federal Credit Union v. C.H. Wagner & Co., Inc.*, 501 F.2d 1120, 1124 & n. 17 (9th Cir.1974). In this action, the basis for such a finding of De Palma's "control" over the corporate defendant must be his corporate office, as he has never been a director and his stock holdings represent only a small portion of the total outstanding stock.

But the extent of De Palma's "control" appears to be a factual question that cannot be resolved at this stage of the litigation. *See, e.g., Hill York Corp. v. American International Franchises*, 448 F.2d at 694 n. 20 ("the issue of 'control' is a com-

**11.** This statute provides: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

**12.** This statute provides, in relevant part: "Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, . . ., with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation."

**13.** The court expresses no opinion as to whether an amendment would be possible under § 25504.1 but notes that this statute explicitly requires proof of "intent to deceive or defraud."

**14.** The defendants initially moved to dismiss the § 11 claim alleged against defendant Perrone as well. But in a letter to the court dated April 17, 1984, Parker Maddux, Esq., counsel to the corporate defendant as well as to the individual defendants, withdrew this objection on behalf of Perrone. The defendants concede that Perrone did sign the registration statement.

plex fact question which requires an examination of the relationships of the various alleged 'controlling persons' to the person or entity which transacted the sale of securities alleged to have violated the Act"), *quoting from Klapmeier v. Telecheck International, Inc.,* 315 F.Supp. 1360, 1361 (D.Minn.1970), *rev'd on other grounds,* 482 F.2d 247 (8th Cir.1973). As Senior Vice President and Chief Operating Officer, De Palma conceivably enjoyed the requisite level of control. Thus, the court concludes that De Palma's liability under sections 11 and 15 cannot be dismissed at this preliminary stage in the litigation. It may develop that De Palma is not covered by the secondary liability theory, but that is a factual matter that must await further discovery and resolution at another point.

The court will deny the defendants' motion to dismiss the section 11 claim against De Palma.

*D. § 17(a) claims against all defendants*

Lastly, the defendants move to dismiss the plaintiffs' § 17(a) claims, 15 U.S.C. § 77q, arguing that there is no private right of action under this statute.[15]

In one sense, this is an easy motion. Although there are splits within the circuits,[16] the Ninth Circuit appears to have explicitly ruled that a private right of action exists under § 17(a). *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981). In its discussion of the issue, the *Stephenson* court stated:

Before disposing of the fourth cause of action, however, one issue not raised by the parties must be resolved. Neither the Supreme Court nor this circuit has held that a private right of action exists under § 17(a) of the 1933 Act. *Aaron v. SEC,* 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980), *Bosse v. Crowell, Collier and MacMillan,* 565 F.2d 602, 610 n. 12 (9th Cir.1977). The Second Circuit in *Kirschner v. United States,* 603 F.2d 234 (2d Cir.1978), [*cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979) ], however, has found such a right of action. Agreeing with Judge Friendly's comments in *SEC v. Texas Gulf Sulphur, Inc.,* 401 F.2d 833, 867 (2nd Cir.1968), [*cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969) ], the *Kirschner* court said: "there (is) little practical point in denying the existence of a right under § 17 once it is established that an aggrieved buyer has a private action under § 10(b) of the 1934 Act." 603 F.2d at 241.

---

**15.** This statute reads:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**16.** Of the other circuits that have spoken to this issue, two have implied a private right of action, *see Kirschner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied sub nom. Goldberg v. Kirschner,* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); and *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975), and two have refused

to imply a private cause of action, *see Landry v. All American Assurance Co.,* 688 F.2d 381, 391 (5th Cir.1982); and *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The Seventh Circuit considers the issue an "open question." *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Insurance Co.,* 698 F.2d 320, 323 (7th Cir.1983). Significantly, the *Peoria Union* court also stated that the existence of a private right of action under § 17(a) was "not a terribly important question" because all of the relief obtainable under § 17(a) was also available under § 10(b). *Id.*

The Supreme Court refuses to resolve the issue. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983). In January of this year, Judge Friendly of the Second Circuit again referred to "the much debated question of the existence of an implied private cause of action for damages under § 17(a) ..." *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 941–42 (2d Cir.1984).

In light of the minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act, we think the reasoning of the Second Circuit is persuasive and find that a private right of action exists under § 17(a).

*Id.* at 815.

As is evident from the quoted language, the Ninth Circuit's discussion of the issue is sparse. Under the controlling Supreme Court precedent, the analysis of the private right of action is problematic. Under *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a court should assess the statutory language, Congressional intent, underlying legislative scheme, and federalism concerns before determining that a statute creates a private right of action. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The *Stephenson* court did none of this.[17]

Although it would be easy for this court to follow *Stephenson* blindly and conclude, without any independent consideration, that a private right of action exists for all three provisions of § 17(a), such a result would be unsatisfactory. If *Stephenson* is read as creating a private right of action for all § 17(a) claims, including (a)(2) and (a)(3) claims, it would drastically alter the current balance between the various securities statutes. In particular, reading § 17(a) as broadly as the naked language of *Stephenson* seems to imply would undermine the vitality of § 10(b), a result which appears to be without support in the legislative history and with consequences that the Ninth Circuit could not have intended.

This incongruous result would occur, under the broad reading of *Stephenson,* because of recent case law interpreting §§ 17(a)(2) and (a)(3). In *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), the Supreme Court held that in an SEC proceeding, there is no need to prove scienter under either (a)(2) or (a)(3). *Id.* at 695–97, 100 S.Ct. at 1954–57. Thus, if the broad *Stephenson* holding (creating an unqualified right of action under (a)(1), (a)(2) and (a)(3)) is combined with *Aaron,* plaintiffs can bring a private securities action without having to prove scienter.

Such a result would be irreconcilable with § 10(b), which does require scienter. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Indeed, the combined effect of *Stephenson* and *Aaron* would be to render § 10(b) nugatory. *See Roskos v. Shearson/American Express, Inc.,* 589 F.Supp. 627 (E.D.Wisc., 1984) (available August 15, 1985 on WESTLAW, allfeds library, dct file) ("to permit a private right of action under § 17(a) would cause the statutory and judicially-crafted restriction on § 10(b) of the 1934 Act and §§ 11 and 12 of the 1933 Act to atrophy and fall away as securities fraud cases hustled in the back door of § 17(a)"); *Hudson v. Capital Management International, Inc.,* 565 F.Supp. at 626; *Malik v. Universal Resources Corp.,* 425 F.Supp. 350, 363 (1976). In essence, private actions not maintainable under §§ 10(b), 11 or 12 could suddenly become viable under § 17(a).

One possible interpretation of these cases which could avoid this result is to conclude that *Aaron* was only interpreting the language of § 17(a) in the context of an SEC proceeding. Under this interpretation, it would only be the SEC that does not have to prove scienter under (a)(2) and (a)(3). Such an interpretation, however, could not withstand close scrutiny. While it may be theoretically possible to limit *Aaron* to its specific factual setting, there is nothing in the case itself that suggests that the Supreme Court intended to limit its holding in such a fashion. *Aaron's* conclusion that (a)(2) and (a)(3) do not require an allegation of fraud or scienter was based upon an analysis of the statute;

---

**17.** By way of contrast, in *Landy v. All American Assurance Co.,* 688 F.2d 381, 384–91 (5th Cir. 1982), the Fifth Circuit engaged in a very careful and detailed analysis of the *Cort v. Ash* factors. After reviewing all four elements laid out in *Cort v. Ash,* the *Landry* court concluded that no private right of action exists at all under § 17(a).

there is no suggestion that the statute could or should be interpreted differently when a private party attempts to sue under its provisions. Thus, this means of reconciling the cases with the statutory construct is unavailing.

The alternative approach—which this court finds persuasive—is to read *Stephenson* as only creating a private right of action under (a)(1) where fraud is alleged. Admittedly, the language of *Stephenson* does not, on its face, compel this limited reading; the words actually used in the *Stephenson* opinion do not mandate a restrictive interpretation. However, a careful reading of the Ninth Circuit's opinion suggests that this narrow application accords with the analysis implicitly adopted by the *Stephenson* court.

In reaching its decision, *Stephenson* quoted from Judge Friendly's concurring opinion in *Texas Gulf Sulphur* and stated that "we think the reasoning of the Second Circuit is persuasive." 652 F.2d at 815. But in adopting the reasoning of the Second Circuit, the *Stephenson* court used language that failed to acknowledge or apply Judge Friendly's cautionary language. When Judge Friendly conceded the existence of a private right of action, he did so "with the important provision that fraud, as distinct from negligence, must be alleged." 401 F.2d at 867. In *Stephenson,* the Ninth Circuit omitted this limitation.

The explicit language of *Stephenson* —"a private right of action exists under § 17(a)"—does not expressly state the more limited analysis of the Second Circuit. Although purporting to follow the Second Circuit because of its "persuasive reasoning," *Stephenson's* broad language actually contradicts the logic implicit in Judge Friendly's *Texas Gulf Sulphur* opinion. *Texas Gulf Sulphur* acknowledged that if fraud was alleged, there was no difference between a private right of action under § 17(a) and an action under § 10(b). But by creating a private right of action for (a)(2) and (a)(3)—causes of action not requiring an allegation of fraud—*Stephen-*son went beyond the limits carefully circumscribed by Judge Friendly.

This court concludes that the intent of the *Stephenson* panel, by citing to and purporting to follow the Second Circuit, was to acknowledge a private right of action under § 17(a) only when fraud is alleged. *See Hudson v. Capital Management International, Inc.,* 565 F.Supp. at 627. Although the language of *Stephenson* may seem broader, the internal logic of the decision compels this conclusion. It is this court's conclusion that had the *Stephenson* court explicitly considered the conundrum discussed here, it would have explicitly limited the scope of its holding concerning a private right of action.

Thus, under the analysis set out above, this court will not entertain a private right of action under § 17(a) of the 1933 Act unless scienter is alleged. As scienter has not been alleged by the plaintiffs here, the court will dismiss the § 17(a) claim.

## CONCLUSION

The court certifies the plaintiff class under rule 23(b)(3).

The court denies the motion to certify a separate § 10(b) plaintiff class.

The court certifies the two defendant classes under rule 23(b)(3).

The court dismisses the § 12(2) claims of all plaintiffs who did not allege from whom they purchased their shares.

The court dismisses all § 12(2) claims against the individual defendants.

The court dismisses the § 12(2) claim against the corporation.

The court dismisses the § 25400 *et seq.* claim under the California Corporations Code against all defendants.

The court denies the motion to dismiss the § 11 against De Palma.

The court dismisses the § 17(a) claim against all defendants.

Leave to amend will be granted to allege facts in accordance with this opinion.

IT IS SO ORDERED.