In re CENDANT CORPORATION SECURITIES LITIGATION.

This document relates to:

William P. Yeager and Virginia I. Yeager, Co–Trustees of the William P. Yeager and Virginia I. Yeager Trust, Plaintiffs,

v.

Cendant Corporation; Ernst & Young LLP, et al., Defendants.

No. CIV.A. 98–1664.

United States District Court, D. New Jersey.

Dec. 13, 1999.

---

Joel M. Kozberg, Gradstein, Luskin & Van Dalsem P.C., Los Angeles, CA, Robert Lewin, Moshe Sasson, Stroock & Stroock & Lavan, LLP, New York City, for plaintiffs.

Stephen S. Radin, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, NJ, Greg Danilow, Weil, Gotshal & Manges, New York City, for defendants.

## OPINION

WALLS, District Judge.

### I. *INTRODUCTION*

Plaintiffs William P. Yeager and Virginia I. Yeager, Co–Trustees of the William P. Yeager and Virginia I. Yeager Trust, began this suit in the Central District of California based on alleged violations of the federal securities laws and various sections of the California Corporations Code, as well as com-

mon-law fraud and negligent misrepresentation. The action was transferred to this court by order of the Judicial Panel for Multidistrict Litigation. Its complaint names as defendants, Cendant Corporation, Ernst & Young LLP, and individual directors of Cendant who were directors and officers of CUC, Inc. and HFS, Inc. before the two companies merged.

CUC outside director defendants Bartlett Burnap, T. Barnes Donnelley, Stephen A. Greyser, Burton C. Perfit, Robert R. Rittereiser, and Stanley M. Rumbough, Jr., move to dismiss Count Nineteen (Cal. Corp.Code §§ 25400 and 25500), Twenty (common-law fraud), and Twenty–One (negligent misrepresentation) of the complaint pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b).[1] Defendants Walter A. Forbes and Christopher K. McLeod join the outside directors' motion to dismiss Count Nineteen, and also move to dismiss Count Eighteen (Cal. Corp.Code §§ 25401 and 25501).[2] These defendants (collectively "CUC Defendants") move for an extension of time to answer or respond to the remaining counts of the complaint after the present motion is decided. Plaintiffs cross-move for leave to amend the complaint in the event their pleadings are found deficient.

The motion of the CUC outside director defendants to dismiss Count Twenty against them for common-law fraud is granted. Their motion to dismiss Count Twenty–One for negligent misrepresentation is denied. The motion by defendants Forbes and McLeod to dismiss Count Eighteen against them is granted. The motions of the CUC outside directors, Forbes and McLeod to dismiss Count Nineteen (Cal. Corp.Code §§ 25400 and 25500) against those parties is granted. The plaintiffs' motion for leave to amend the complaint is denied.

## II. BACKGROUND [3]

On August 28, 1997, CUC International, Inc. ("CUC") and HFS Incorporated ("HFS") filed a Registration Statement with the SEC and issued a Joint Proxy Statement/Prospectus to their shareholders which described the proposed merger of the two companies. After approval by CUC and HFS shareholders, the merger was consummated on December 17, 1997, and the combined HFS/CUC entity was named Cendant Corporation.

After the merger, 15 directors designated by CUC were elected to join Cendant's 30–member Board of Directors. These new directors included non-management outside director defendants Burnap, Donnelley, Greyser, Perfit, Rittereiser and Rumbough. Pursuant to this expansion, defendant Walter Forbes, former CEO and Chairman of CUC, became Chairman of the Cendant Board and was slated to become CEO of Cendant on January 1, 2000. In addition, defendant McLeod, who had been Vice Chairman of CUC and President of CUC's Comp–U–Card division, and the CEO of CUC Software before the merger, became Vice Chairman of the Cendant Board.

On April 15, 1998, Cendant reported that it had discovered potential accounting irregularities in certain former CUC business units. On July 14, 1998, Cendant announced that it would restate CUC's reported annual and quarterly net income and earnings per share for 1995, 1996 and 1997. On September 29, 1998, Cendant restated earnings for calendar

---

**1.** In their brief in support of the motion to dismiss, the CUC outside directors also moved to dismiss Count Fourteen, for violation of Cal. Corp.Code § 25504. In their reply brief, these defendants withdraw this portion of their motion. *See* CUC Reply Br. at 11 n.4. Therefore, the court does not address the arguments of any party concerning § 25504.

In Count Fourteen, plaintiffs originally plead violations of Cal. Corp.Code § 25504.1 as well as § 25504. By their brief in opposition to this motion, plaintiffs now disavow any reference in this count to § 25504.1. *See* Pl. Br. at 7 n.13. The court treats this as a voluntary withdrawal and, to the extent that Count Fourteen refers to

§ 25504.1, dismisses it with prejudice pursuant to Fed.R.Civ.P. 41(a)(2).

**2.** Plaintiffs assert in their brief that their reference in Count Eighteen to Cal. Corp.Code §§ 25401 and 25501 was in error. *See* Pl. Br. at 15 n.23. The court nonetheless treats this count as it was plead in the complaint. *See infra,* Section III.D.

**3.** *In re Cendant Corp. Litigation,* 182 F.R.D. 144 (D.N.J.1998), and *In re Cendant Corp. Litigation,* 60 F.Supp.2d 354 (D.N.J.1999) provide a full factual and procedural history of this litigation.

years 1995, 1996, and 1997, and for the first two quarters of 1998.

Between July and October 1998, Chairman Forbes and Vice Chairman McLeod, together with the CUC outside directors named in the complaint, resigned from the Board.

Plaintiffs William P. Yeager and Virginia I. Yeager are co-trustees and beneficiaries of a trust that acquired 461,847 shares of HFS common stock in May 1996 when their real estate business, Yeager Real Estate & Financial Services, Inc., was purchased by HFS. Pursuant to the merger, this trust exchanged its HFS shares for shares of CUC/Cendant. Plaintiffs allege that at the time of the merger, their shares were worth in excess of $44 million. After the stock devaluation, plaintiffs were forced to sell their shares in July 1998 for approximately $19 million.

In April 1999, plaintiffs brought the present suit. The 21–count complaint charges defendants with violations of §§ 11, 12, and 15 of the Securities Act of 1933, §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934, various sections of the California Corporations Code, common-law fraud, and negligent misrepresentation. The six CUC outside director defendants, Forbes, and McLeod now move to dismiss various counts of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

### III. *DISCUSSION*

#### A. Standard for a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the court is required to accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3rd Cir.1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3rd Cir.1998); *see also* 5A Wright & Miller, *Federal Practice & Procedure* § 1357 at 299 (2nd ed.1990).

#### B. Common–Law Fraud (Count Twenty): Motion to Dismiss by CUC Outside Directors

In Count Twenty of the complaint, plaintiffs assert a claim against all defendants for common-law fraud. They allege that the defendants misrepresented the corporation's financial condition in the Registration Statement and the Joint Proxy Statement/Prospectus and in other communications in order to inflate the price of the securities and induce the plaintiffs to purchase them. Plaintiffs further claim that the defendants knew that their statements were false or acted in reckless disregard of the truth, that they purchased securities in reliance on these misrepresentations, and that they were consequently damaged in excess of $14 million. CUC outside directors Burnap, Donnelley, Greyser, Perfit, Rittereiser, and Rumbough, move to dismiss this claim on the basis that it fails to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).

■ That rule requires that in all averments of fraud, "the circumstances constituting fraud . . . shall be stated with particularity." However, "[m]alice, intent, knowledge, and other condition[s] of mind" may be averred generally. *Id.* The Third Circuit details the five elements which plaintiffs

must allege to state a claim for common-law fraud: (1) a specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the persons to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiffs acted upon it to their damage. *Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96, 99 (3rd Cir.1983). In short, Rule 9(b) "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Securities Litig.,* 180 F.3d 525, 534 (3rd Cir. 1999) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3rd Cir. 1998). The Third Circuit has cautioned that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo,* 155 F.3d at 658 (citing *Christidis,* 717 F.2d at 99).

■ The CUC outside directors characterize the complaint as "a paradigm of impermissible 'group pleading' allegations" that "makes absolutely no effort whatsoever to plead particularized allegations of wrongdoing as to *each* or *any* one of the CUC Outside Directors." CUC Br. at 11. They assert that the plaintiffs set forth no facts to infer knowledge or participation of any of the CUC outside directors, and instead rely upon these defendants' positions as directors of CUC and Cendant.

Plaintiffs respond that the complaint identifies CUC's history of accounting problems, which resulted in a one-time cumulative accounting adjustment in 1989 and led the SEC to question the completeness of CUC's financial statements and to compel the corporation to amend its financial statements six times between October and December 1991. Compl. ¶¶ 41–42. Plaintiffs assert that the outside directors "must have been aware of at least some of the ubiquitous fraudulent practices at CUC" because of this history, and that Perfit, Donnelley and Greyser as members of CUC's Audit Committee "must have had first hand knowledge" of the fraud because they were responsible for review of CUC's financial statements.

Such conclusory pleading does not suffice. "[A]llegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" *In re Advanta Securities Litig.,* 180 F.3d at 539 (citation omitted). The complaint here mirrors that recently rejected by this court in *Kennilworth Partners L.P. v. Cendant Corp.,* 59 F.Supp.2d 417, 428–30 (D.N.J.1999), where the plaintiffs "lump[ed] the defendants together and [made] general conclusory allegations of wrongdoing."

Because the plaintiffs have not plead "the manner in which ... defendant[s] knowingly departed from the truth," *see Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 289 (3rd Cir.1992), nor even alleged that any of the outside directors personally participated in the fraud, their claim cannot stand. *See Eli Lilly and Co. v. Roussel Corp.,* 23 F.Supp.2d 460, 491–92 (D.N.J.1998) (dismissing claim for common-law fraud where plaintiff corporation alleged that defendant's "representatives" had met with its own representatives but failed to indicate who the speakers were or to whom they were speaking).

■ Plaintiffs further argue that scienter can be inferred because several of the CUC outside directors made "suspicious and unusual stock sales" during a "relevant time period":

*Perfit* sold, during the relevant period, approximately 29,000 shares of CUC and Cendant common stock for proceeds of approximately $846,000. (Compl.¶ 10(a)).

*Donnelley* sold, between June, 1997 and March 17, 1998, over 337,000 shares of CUC and Cendant common stock for proceeds of approximately $9.6 million. (Compl.¶ 10(b)).

*Burnap* sold, between January 22, 1998 and March 6, 1998, approximately 700,000 shares of CUC and Cendant common stock for proceeds of over $20 million. On July 28, 1998, the Company announced Burnap's resignation from the Board. (Compl.¶ 10(e)).

*Rumbough* sold approximately 76,000 shares of CUC and Cendant common stock for proceeds of over $2.6 million. (Compl.¶ 10(g)).

Pl. Br. at 25–26. The plaintiffs argue that their allegations of these stock sales are sufficient to sustain their fraud claim. The court does not agree.

Plaintiffs rely upon this court's decision, *In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117 (1999), which sustained a claim for insider trading against certain former HFS directors under Rule 9(b). There the court considered a complaint which alleged that four defendants had sold over 3 million Cendant shares between February 5 and April 7, 1998, immediately after Cendant's Audit Committee learned of a $23 million overstatement in CUC's income. The plaintiffs in the derivative action further charged that Silverman, one of the selling defendants, was informed of inappropriate accounting adjustments and held a meeting to discuss them. Under those circumstances, this court concluded: "[t]he timing of defendants' stock sales in relation to these events, alone, raises a strong inference of scienter." *Id.* at 131.

Here, this complaint is easily distinguished: Because of their "group pleading" approach, the plaintiffs have failed to allege that even one of the CUC outside directors was actually aware of any accounting irregularities. Further, their conclusory claim that the timing of the stock sales was "suspicious" is belied by the absence of dates on which Perfit and Rumbough purportedly executed the trades. *Cf.* 189 F.R.D. at 131. The court can not reasonably conclude that plaintiffs' allegations of stock sales scattered over a span of ten months, not evidently conducted in concert, give rise to an inference of scienter.

In this circuit, "[w]e will not infer fraudulent intent from the mere fact that some officers sold stock. . . . Instead, plaintiffs must allege that the trades were made at times and in quantities that were suspicious enough to support the necessary inference of scienter." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1424 (3rd Cir.1997). The *Burlington* Court examined a claim for violation of Section 10(b) of the Securities Exchange Act based on allegations that three officer-defendants had artificially inflated the price of the corporation's stock in order to profit from sales of portions of their stock holdings against the criteria of Rule 9(b): The claim was dismissed for failure to adequately plead scienter because only three of the five defendants had sold stock. Plaintiffs had presented information on the total stock holdings of only one defendant who traded a "minute fraction" of his holdings. They failed to allege whether the trades were "normal and routine" and resultant profits substantial in comparison to the defendants' compensation. *Id.* at 1423.

The Yeager plaintiffs have plead no more. They do not allege that each of the CUC outside director defendants conducted stock sales during the time period leading to the April 15, 1998 announcement. Moreover, because the plaintiffs provide no information about the total stock holdings or compensation levels of any of these defendants, the court cannot infer that the stock trades were unusual in either scope or timing. *See In re Advanta Corp. Securities Litig.*, 180 F.3d 525, 540–41 (3rd Cir.1999). Finally, the complaint is silent about the defendants' trading practices before any period the plaintiffs find relevant. *Cf. id.* "A large number of today's corporate executives are compensated in terms of stock and stock options. . . . It follows then that these individuals will trade those securities in the normal course of events." *Burlington Coat Factory*, 114 F.3d at 1424. The plaintiffs have not met their burden under Rule 9(b). The motion of the CUC outside directors to dismiss the plaintiffs' claim for common-law fraud in Count Twenty of the complaint is granted.

### C. Negligent Misrepresentation (Count Twenty–One): Motion to Dismiss by CUC Outside Directors

In Count Twenty–One, plaintiffs charge all defendants with negligent misrepresentation:

Defendants and each of them misrepresented the corporation's financial condition in the Registration Statement and the Joint Proxy Statement/Prospectus and other communications ... Defendants failed to exercise reasonable care and make an investigation of the facts which would have disclosed the omissions and misrepresentations.

Compl. ¶ 179.

The CUC outside directors move to dismiss this claim on the ground that it is subject to Rule 9(b) because the charge sounds in fraud. They assert that this count incorporates by reference the factual allegations of plaintiffs' fraud claim against the CUC outside directors, and specific allegations of fraudulent conduct included in their § 10(b) claims. *See, e.g.,* Compl. ¶ 18 ("Cendant revealed that a 'widespread and systematic' fraud had occurred at CUC that included improperly recognizing fictitious revenues, falsely coding services sold to customers and fraudulently manipulating merger reserves."); Compl. ¶ 19 ("CUC's and Cendant's fraudulent accounting practices were 'craftily planned' to assure that CUC met or exceeded analyst expectations. The fraudulent scheme included hundreds of unsupported journal entries knowingly made in order to create hundreds of millions of dollars of revenue income. The magnitude of financial fraud at CUC and Cendant was confirmed when Cendant filed its restated financial statements with the SEC on September 29, 1998.")

Plaintiffs counter that the clear language of this count belies the defendants' argument. And the court agrees. Although this claim incorporates the general factual allegations that seek to establish fraud, the plaintiffs' reference to "reasonable care" denotes that they had no intention to assimilate their cause of action for negligence into a claim for fraud. *See Resolution Trust Corp. v. del Re Castellett,* 1993 WL 719764, at *2 (D.N.J. 1993) (refusing to apply Rule 9(b) to a claim grounded in negligence though the events underlying a parallel fraud count were identical, because "plaintiff is entitled to proceed on alternate grounds of liability"). Faced with similar arguments, the Eastern District of Pennsylvania also concluded: "Because a claim of misrepresentation is distinct from a claim of fraud [under state law], Rule 9(b) does not apply to the former according to its terms." *Small v. Provident Life and Accident Insur. Co.,* 1998 WL 848112, at * 3 (E.D.Pa.1998) (citation omitted).

The authorities asserted by the directors to support the proposition that Rule 9(b) applies to a claim of negligent misrepresentation which sounds in fraud are inapposite. *See, e.g., Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 178–79 (5th Cir.1997); *Ellis v. Provident Life & Accident Ins. Co.,* 3 F.Supp.2d 399 (S.D.N.Y.1998). Our Circuit's *Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3rd Cir.1992), cited by the moving defendants, held that Rule 9(b) applied to claims under §§ 11 and 12(2) of the Securities Act of 1933 only where there was "not a hint in the [plaintiffs'] allegations that defendants were negligent" and the factual allegations referenced in the challenged causes of action were replete with averments that defendants " 'intentionally,' 'knowingly,' or 'recklessly' misrepresented and omitted to represent certain material information." *Id.* at 287–88.

This court has already rejected claims by the CUC outside directors that the heightened pleading standard should be applied to a claim for violation of § 11 of the Securities Act of 1933 based on negligence. *See In re Cendant Corp. Litigation,* 60 F.Supp.2d 354, 364 (D.N.J.1999). "By its terms, the particularity requirement in Rule 9(b) applies only to averments of fraud. Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses." Wright & Miller, *Fed. Pract. and Proc.: Civil 2d* § 1297, 615 (1990).

The motion of the CUC outside directors to dismiss the negligent misrepresentation claim in Count Twenty–One of the complaint is denied.

### D. Count Eighteen: Motion to Dismiss by Forbes and McLeod

■ The caption of the plaintiffs' Eighteenth Claim for relief alleges that Forbes

and McLeod, among others, are jointly and severally liable to the plaintiffs under §§ 25401 and 25501 of the California Corporations Code. Compl. at 73. In their brief, defendants Forbes and McLeod responded to the merits of a claim under §§ 25401 and 25501.

Now, by their brief, plaintiffs claim that they intended to refer to § 25504, and that this claim is "substantively identical" to the Fourteenth Claim for relief, which alleges that all CUC defendants except Pember violated § 25504. *See* Pl. Br. at 15 n.23; *see also* Compl. ¶ 165 (alleging that "each of the CUC Individual Defendants named in this Count was a controlling person of CUC within the meaning of California Corporations Code § 25504"). The court cannot accept the plaintiffs' belated attempt to so amend their pleadings. Accordingly, the court treats Count Eighteen as plead under §§ 25401 and 25501 and considers the defendants' motion on its merits.

Cal. Corp.Code § 25401 states: "It is unlawful for any person to offer or sell a security ... by means of any written or oral communication which includes an untrue statement of material fact or omits to state a material fact in order to make the statements made, in the light of the circumstances under which they were made, not misleading." In turn, § 25501 provides a cause of action for a purchaser of securities to sue a seller who violates § 25401: "Any person who violates Section 25401 shall be liable to the person who purchases a security from him ..." By its terms, liability under this latter provision is limited to a seller in strict contractual privity with the plaintiff. *See* Harold Marsh and Robert H. Volk, Practice Under the California Securities Laws § 14.03[4][a] ("Marsh & Volk"); *see also Mirkin v. Wasserman,* 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568, 581 (1993) ("The Legislature ... knew how to write a statute that conditioned liability on privity. In section 25501 the Legislature did just that."); *SEC v. Seaboard Corp.,* 677 F.2d 1289, 1296 (9th Cir.1982) (dismissing § 25501 claim against attorney-agent of corporation on basis that he was "not the literal seller, as required by this section.")

Here, plaintiffs allege that they acquired their shares of CUC/Cendant stock when their HFS shares were exchanged pursuant to the merger. Compl. ¶ 16. Therefore, the only entity with whom they can plead a relationship of strict privity is Cendant the corporation, not its individual officers and directors. *See, e.g., In re Diasonics Securities Litig.,* 599 F.Supp. 447, 459 (N.D.Ca. 1984) (dismissing claims against corporation, officers and directors, and underwriters, where plaintiffs had not alleged that they were in strict privity with any defendant). This statute creates direct liability; it does not address the liability of officers and directors, the movants here, who were not direct sellers in privity with the plaintiffs.

This interpretation is enforced by comparison to other sections of the California Corporations Code which create liability for certain classes of individual defendants: for example, § 25504 creates joint and several liability for principals and controlling persons of corporations, and § 25504.1 governs the liability of persons who "materially assist" in violations of § 25401 with the intent to deceive or defraud. *Id.; see also Lubin v. Sybedon Corp.,* 688 F.Supp. 1425, 1453 (S.D.Ca.1988).

The plaintiffs' claim under §§ 25501 and 25401 against Forbes and McLeod must fail. The motion by Forbes and McLeod to dismiss Count Eighteen against them is granted.

### E. Cal. Corp.Code §§ 25400 and 25500 (Count Nineteen): Motion to Dismiss by CUC Outside Directors, Forbes, and McLeod

■ Count Nineteen of the complaint alleges that all defendants made material misstatements or omissions for the purpose of inducing the purchase or sale of securities, and that their continuous course of conduct to conceal information about CUC and Cendant artificially inflated the market price of the corporation's stock to their detriment. Plaintiffs claim that these acts constituted a violation of Cal. Corp.Code §§ 25400 and 25500. The movants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

California Corporations Code § 25400 reads in part:

It is unlawful for any person, directly or indirectly, in this state:

(d) If such person is a broker-dealer or other person selling or offering for sale ... to make, for the purpose of inducing the purchase ... of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

In turn, § 25500 provides:

Any person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction....

According to these defendants, this count should be dismissed because there are no allegations that the plaintiffs and defendants had the requisite purchaser-seller relationship.

The statute does not require privity of contract between plaintiffs and the defendants. *See* Marsh & Volk § 14.05[5]. Instead, "[a]ny person who engages in market transactions at a time when the price was affected by the defendant's manipulative activities may sue to recover his or her loss under these provisions." *Id.*

The definition of a "seller" under § 25400 is equivalent to that of the 1933 Securities Act's Section 12. *See In re Activision Securities Litig.,* 621 F.Supp. 415, 422 (N.D.Ca. 1985); *Copland v. Grumet,* 1998 WL 256654, at *12 n. 21 (D.N.J.1998). "It is settled that § 12(1) imposes liability on the owner who passed title, or other interest in the security, to the buyer for value." *Pinter v. Dahl,* 486 U.S. 622, 642, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Relevant to this case, the Third Circuit has extended the *Pinter* standard to claims under § 12(2) as well: the definition of "seller" thus includes one "who successful-

ly solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Craftmatic Securities Litig. v. Kraftsow,* 890 F.2d 628, 633–637 (3rd Cir.1989). The *Pinter* Court rejected a test which imposed liability on defendants whose actions were a "substantial factor" in causing the purchase, or whose actions were "collateral" to the offer or sale. *See* 486 U.S. at 648–650, 108 S.Ct. 2063. Accordingly, the Third Circuit concluded that actions against remote sellers are precluded and has decided that a purchaser-plaintiff must demonstrate a defendant's "direct and active participation in the solicitation of the immediate sale" to create liability as a seller under § 12(2). 890 F.2d at 636.

Plaintiffs contend that because the CUC outside directors, Forbes, and McLeod each signed the Registration Statement, and the Joint Proxy Statement/Prospectus contained statements by them, the moving defendants qualify as statutory sellers under the California statute. Compl. ¶ 27. "It is axiomatic that the purpose of the Proxy Statement was to solicit shareholders ... to approve the merger of HFS with CUC and exchange their HFS shares for CUC/Cendant shares.... In the context of a merger, there is no more direct or personal an effort to solicit the purchase of shares than the proxy solicitation." Pl. Br. at 18–19. Defendants reply that their signatures on the Registration Statement are insufficient to impose liability. They rely on *In re Activision Securities Litig.,* where even defendants who helped draft a prospectus, participated in "road show" presentations to brokers and analysts, analyzed the market and set the price of shares, and negotiated an agreement with underwriters were not considered "sellers" under § 12(2). *See* 621 F.Supp. at 421.

The defendants' position is correct. The plaintiffs do not allege that any moving defendant sold his shares directly to them. Nor do they allege that the defendants personally solicited them to approve the merger and to exchange their HFS shares for CUC/Cendant shares. They do not even make a conclusory claim that the defendants "solicited" them, and in so acting were moti-

vated by a desire to serve their or others' financial interests. *Cf. Craftmatic*, 890 F.2d at 637. Regarding the CUC outside directors, the plaintiffs make no allegations that depict their involvement in signing the Registration Statement as other than "collateral." As to Forbes and McLeod, plaintiffs allege in essence that they possessed sufficient power to cause CUC to engage in the allegedly wrongful conduct by virtue of their company positions (Compl.¶88), and that Forbes participated in preliminary discussions in early 1997 with Silverman, the CEO and Chairman of the HFS Board until the merger, about strategic opportunities and a possible merger (Compl.¶32). The remainder of the complaint recites group allegations that "members of the senior management of both companies" engaged in meetings about the merger and the purported due diligence review. *See, e.g.*, Compl. ¶33.

These allegations cannot withstand this motion. "A director's act in authorizing the sale of a company's securities is not sufficient to constitute him a seller of those securities under § 12(2). On the contrary: such individuals are quintessentially collateral participants; and *Pinter* teaches that this will not do." *Mabon, Nugent & Co. v. Borey*, 127 B.R. 727 (S.D.N.Y.1991).

The conduct alleged does not state a claim under § 25400 and 25500 of the California Corporations Code against the CUC outside directors, Forbes, or McLeod. The motion to dismiss Count Nineteen against these parties is granted.

### F. Leave to Amend the Complaint

Plaintiffs move for leave to amend their complaint in the event that any of their pleadings are found deficient. They assert that such a request should be freely granted, particularly where claims are dismissed because of failure to plead fraud with particularity under Rule 9(b).

 This court has the discretion to permit such an amendment pursuant to Fed. R.Civ.P. 15(a). *See Kauffman v. Moss*, 420 F.2d 1270, 1276 (3rd Cir.1970). However, like the Kennilworth partners in a recent decision by this court involving Cendant, the Yeager plaintiffs have failed to describe the substance of any proposed amendment and have not submitted a proposed amended complaint. *See Kennilworth*, 59 F.Supp.2d at 431. This does not comport with N.J. Local Civ. Prac. R. 4:9–1, which mandates: "A motion for leave to amend shall have annexed thereto a copy of the proposed amended pleading."

To decide whether to permit amendment, the court must consider whether the plaintiffs evidence undue delay or bad faith, the futility of the amendment, and prejudice to the defendants. *See, e.g., Harel v. Rutgers*, 5 F.Supp.2d 246, 260–61 (D.N.J.1998). Without a proposed amended pleading, this court is unable to weigh these factors and determine whether an amendment might resuscitate the plaintiffs' claims or whether it would be futile. *See Abbott v. Latshaw*, 164 F.3d 141, 150 (3rd Cir.1998). Plaintiffs' motion for leave to amend is denied.

### CONCLUSION

The motion of the CUC outside director defendants Burnap, Donnelley, Greyser, Perfit, Rittereiser, and Rumbough to dismiss Count Twenty against them for common-law fraud is granted. Their motion to dismiss Count Twenty–One for negligent misrepresentation is denied. The motion by defendants Forbes and McLeod to dismiss Count Eighteen against them is granted. The motions of the CUC outside directors, Forbes, and McLeod to dismiss Count Nineteen (Cal. Corp.Code §§ 25400 and 25500) against only those parties is granted. The plaintiffs' motion for leave to amend the complaint is denied.